**In re the MARRIAGE OF Kathy Arlyne LOVE and Bruce Wayne Love,**

**Upon the Petition of Kathy Arlyne Love, Appellant,**

**And Concerning Bruce Wayne Love, Appellee.**

No. 93–739.

Court of Appeals of Iowa.

Nov. 29, 1993.

James C. Steffes of Steffes & Kenyon, P.C., Creston, for appellant.

Arnold O. Kenyon II, Creston, until his withdrawal and then, Kermit Dunahoo of Dunahoo Law Firm, Des Moines, for appellee.

Heard by OXBERGER, C.J., and SACKETT and HABHAB, JJ.

OXBERGER, Chief Judge.

Kathy and Bruce Love were married on July 2, 1987. Two children were born of the marriage: Hannah Ruth Love, born November 3, 1990, and Madeline Love, born November 10, 1992. Kathy also has two children by a previous marriage: Caleb Sweet, age 13, and Melissa Sweet, age 12. Kathy filed a petition for dissolution of marriage on June 12, 1992.

The matter went to trial on March 4, 1993. The court filed its findings of fact, conclusions of law and decree on April 14, 1993. The district court awarded Bruce the physical custody of Hannah and Madeline, noting that Bruce is a devoted parent who believes in education, the parent better able to provide for the children's social and material needs, and "relates well to people around him, which cannot be said of the Petitioner." The district court noted that Kathy appeared to be unstable emotionally, and "has been on public assistance for her own support." The court postponed the transfer of custody until

after Madeline was weaned from breast feeding—the specific date was set for October 1, 1993.

Kathy appeals.

█ Our review in cases such as these is de novo. Iowa R.App.P. 4. We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses. Iowa R.App.P. 14(f)(7). We are not bound by these determinations, however. *Id.* Prior cases have little precedential value, and we must base our decision primarily on the particular circumstances of the parties presently before us. *In re Marriage of Weidner,* 338 N.W.2d 351, 356 (Iowa 1983).

### Child Custody

Kathy claims the district court erred in failing to award primary physical care of Hannah and Madeline to her. She notes Bruce has been physically destructive, has been physically abusive to Caleb, and has little if any experience caring for infants.

█ In child custody cases, the best interests of the child is the first and governing consideration. The factors the court considers in awarding custody are enumerated in Iowa Code section 598.41(3), in *In re Marriage of Weidner,* 338 N.W.2d 351, 355–56 (Iowa 1983), and in *In re Marriage of Winter,* 223 N.W.2d 165, 166–67 (Iowa 1974). All factors bear on the "first and governing consideration," the court's determination of what will be in the long-term best interests of the child. *In re Marriage of Vrban,* 359 N.W.2d 420, 424 (Iowa 1984). The critical issue in determining the best interests of the child is which parent will do better in raising the child; gender is irrelevant, and neither parent should have a greater burden than the other in attempting to gain custody in a dissolution proceeding. *In re Marriage of Ullerich,* 367 N.W.2d 297, 299 (Iowa App. 1985).

█ In our de novo review, a founded child abuse report against Bruce and an evaluation conducted by the Director of the Des Moines Child & Adolescent Guidance Center have given us considerable pause. During trial, documentation of a founded child physical abuse report was presented. The report was investigated and authored by Susan W. Grose, Level III Social Worker, from the Iowa Department of Human Services. The investigation was triggered by a report of physical abuse of Caleb, then thirteen and in the sixth grade, by his stepfather, Bruce Love. Ms. Grose met with Caleb individually, with his mother present and with both his mother and Bruce present. In her report Ms. Grose concluded the information obtained during the investigation indicated, by a preponderance of evidence, Caleb had been physically abused. The investigative findings included the following:

> [O]n Sunday, 03–15–92, at around 4:30 p.m. [Caleb] was at home and his stepfather [Bruce] had sent him to his room and told him he was not to come out. Caleb said his mother then told him to take the television into Melissa's room. Caleb said he carried the television into Melissa's room and this is when his stepfather hit him with a broom.... On this date [03–18–92] I observed on the inside of Caleb's right forearm a brown circular bruise. Caleb said it was still tender to the touch.

Caleb also told Ms. Grose when he was twelve years old and living in Mississippi, Bruce hit him which, in turn, caused him to hit the side of his head into the corner of a door. He was taken to the hospital and received eight stitches. According to Caleb, Bruce told the hospital authorities he "went to slap him and he ducked."

Bruce admitted hitting Caleb with the broom during his meeting with Ms. Grose on March 23, 1992. He stated he could not recall why he struck Caleb with the broom, although the incident had occurred just a week prior to the meeting. Bruce also indicated he did not dwell on things once they happened, but looked at the incident as being behind him. Bruce also told Ms. Grose he did not believe his family needed any services at this time.

At trial, Bruce admitted to another incident in which he struck Caleb with a canvas tool belt. In addition, Kathy testified to several incidents in which Bruce expressed uncontrolled anger towards her and her chil-

dren and damaged property in his expression of that anger.

Following the initial trial, the district court scheduled a hearing to discuss the transfer of the children to the father. Dr. Marilee Fredericks was asked to develop recommendations regarding the timing and methodology of transferring the children to their father. Dr. Fredericks has a Ph.D. and is the Director of the Des Moines Child & Adolescent Guidance Center. In her report, Dr. Fredericks is careful to acknowledge the Court had made the decision to transfer and her report providing assistance in that transfer should in no way be seen as an endorsement of that decision. Dr. Fredericks noted, throughout her report, the children were bonded primarily with their mother and she was the primary caregiver. She also indicated she observed at least one situation in which Madeline was inconsolable while alone with Bruce. Dr. Fredericks also indicated Bruce did not appear to have cared for Hannah without Kathy present until visitations were arranged. She also points out that the impact of separation anxiety on current and future development would be reduced if the children were essentially equally attached to both parents. In this case, however, they are not, as the children are clearly more bonded with their mother. Dr. Fredericks also notes that Bruce's "willingness/desire to assume physical care does not appear to be accompanied by experience in child care or expertise in or understanding of the need for supplying the emotional parental supports required by children who are anxious/misbehaving." Dr. Fredericks reports that her evaluation and observation of Kathy indicated she has the capacity to care for the children.

In its findings, the district court emphasized Kathy's lower educational status and economic and emotional instability. It also emphasized Kathy's dependence on public assistance and indicated she had even fraudulently obtained public assistance. We in no way condone any type of illegal or improper conduct. However, we are more concerned, and persuaded by, Bruce's history of physical abuse of Caleb, his lack of bonding with his children, and the concerns expressed by Dr. Fredericks. While the district court indicates the closeness between Kathy and the children is largely a function of the girls' age, we strongly disagree. To draw such a conclusion ignores two very key factors. First, Kathy has been the primary care provider for the children since birth, by agreement of the parties. Kathy has attended, almost exclusively, to children's basic needs. She arranged for their doctor's appointments, daily feeding, and bathing, as well as their ongoing emotional needs. Secondly, to say that this is solely a function of the children's age implies that fathers are not capable of forming primary parenting bonds with young children. In fact, as Dr. Fredericks stated in her report, in many families the bond between the children and their parents is much more equal than the bond in the Love family. To now disregard the strong bond between Kathy and her children and to disregard Bruce's decision not to develop a stronger bond with the children operates as an injustice to the children.

We conclude the strength of the bond between Kathy and the children, the potential for damage if that bond is interrupted as noted by Dr. Fredericks, and the founded child abuse report against Bruce indicate the long term best interest of the children will better be served by awarding the physical care of the children to Kathy. We modify the decision of the district court to award the physical care of Hannah and Madeline to Kathy. We order the child support currently being paid by Bruce to continue as required by the uniform guidelines.

**AFFIRMED AS MODIFIED.**