**In re the MARRIAGE OF James Edward RIGGERT and Julie Ann Riggert.**

**Upon the Petition of James Edward Riggert, Petitioner–Appellee/Cross–Appellant,**

**And Concerning Julie Ann Riggert, Respondent–Appellant/Cross–Appellee.**

No. 94–1408.

Court of Appeals of Iowa.

June 27, 1995.

Heard by DONIELSON, C.J., and SACKETT and HUITINK, JJ.

SACKETT, Judge.

Respondent-appellant/cross-appellee Julie Ann Riggert appeals and petitioner-appellee/cross-appellant James Edward Riggert cross appeals from the decree dissolving their marriage. Julie contends primary physical care of the children should have been awarded to her, not James. She asks, if she is not granted physical care, the primary physical care be alternated each year. James on cross appeal contends the trial court should have required treatment or counseling for Julie and awarded too much visitation. He contends he should have appellate attorney fees. We affirm.

James and Julie were married in September 1978, and they separated in June 1992. They have two daughters born in 1983 and 1986. James and Julie are college graduates and have held various jobs. They moved to Iowa City in 1991, where Julie accepted a position at the University of Iowa as a medical technologist. James currently owns his own business involved with selling and installing security systems. They both have at certain times during the marriage assumed primary responsibility for the children. When they separated and after the dissolution was filed, they agreed to divided custody providing they have the children on alternating weeks.

The marriage broke up when James discovered Julie had been involved in an emotional and sexual relationship with a young teen-aged girl, who had been her student at a school where she was teaching. Julie had not been honest with James about the situation and he first learned of it when the Iowa City *Press Citizen* called him in reference to a lawsuit the alleged victim had filed concerning the abuse.

Julie contends physical care of the girls should have been awarded to her. She challenges specific findings of the trial court, particularly findings about her relationship with the young girl, her anger toward James,

Randy E. Trca of Randy Trca Law Firm, Iowa City, for appellant.

Randall B. Willman of Leff, Haupert & Traw, Iowa City, for appellee.

and the finding James can provide superior care.

We review de novo. Iowa R.App.P. 4 (1993); *In re Marriage of Harris,* 499 N.W.2d 329, 330 (Iowa App.1993). The question is which parent will do the better job of raising the children. *In re Marriage of Rodgers,* 470 N.W.2d 43, 44 (Iowa App.1991). We look to the factors set forth in *In re Marriage of Winter,* 223 N.W.2d 165, 166–167 (Iowa 1974).

Julie argues too much emphasis was placed on her relationship with the young girl, Miss Morgan. The girl testified at the custody hearing. Julie filed a recent motion with this court contending the girl has now recanted the testimony as to the extent of the abuse. Julie requested a remand for the purposes of recalling the girl as a witness and reexamining her concerning the events. The recanted testimony allegedly would not deny the abuse but would concern the extent of the abuse. We denied this motion.

Julie started the relationship with the girl when the child was twelve and Julie was twenty-three. At the time, Julie was a teacher in the girl's school. The girl testified at trial. She testified as to sex acts, including oral vaginal sex. She said sex occurred in an automobile, at both women's homes, and in the presence of the children.

Julie objects to the following finding of the trial court:

> The court cannot grant primary care to the Respondent who has demonstrated in the past by her actions such a breakdown in personality that permitted her to engage in a perverted sexual relationship with a minor female. Respondent's relationship with Julie Morgan was not an isolated event; but, rather a calculated, enduring predatory action which resulted in the total molestation of a child.

Dr. John Tedesco of the Child and Adolescent Guidance Center was appointed to do a custody evaluation, and he recommended physical care of the children be awarded to James.

The evaluation report of Dr. Tedesco provided, in part:

The last factor to be considered in the issue of primary care and custody is related to the child sex abuse allegations referred to earlier in this report. While the exact nature of the events that took place between Mrs. Riggert and her student remain unclear, it seems quite obvious that an improper relationship developed and continued across a rather lengthy period of time. At best, Mrs. Riggert made a series of decisions that exhibited extremely poor judgment. At worst, she is a sexual offendér who is denying her offense, attempting to mitigate the seriousness of the problem, and is portraying herself as a victim. Regardless of which view is most accurate, the issue of poor judgment is of great concern. Whether it be in the area of sexual behavior or other areas of functioning, it is not clear to me that Mrs. Riggert is going to be able to apply the knowledge, skills, and abilities she obviously possesses in a consistent and productive fashion as her children grow and develop. For all these reasons, primary care and custody with Mr. Riggert appears to be the best option at this time.

Julie now argues, while the acts showed a poor lack of judgment on her part, the acts did not indicate she would be less likely to continue with the loving and caring manner she had provided to her girls. She says the acts did not result in total molestation of Morgan because Morgan already suffered personal problems at home and had stolen from her parents and other people.

Julie contends her activities were not as offensive as James' who might have contacted AIDS and given it to her and a baby she was carrying. She contends James having sex with multiple partners is more damaging than her activities.

Both James and Julie have put their family at risk with their sexual activities. We do not approve of James' conduct, but look differently at sexual contact between consenting adults than we do at sexual contact between an adult school teacher and a child who has not reached her majority. We find no valid reason to modify the custody and visitation

decisions made by the trial court. We affirm on this issue.

■ We also deny Julie's request we provide for physical care to change in alternating years. James is opposed to that and there is no evidence it would serve the children's interests.

■ James contends Julie should have been ordered to have counseling and treatment. The trial court found Julie admitted the sexual contact during trial but has refused to participate in a sexual abuse program and the only evidence she has recovered is her own testimony. Julie's treating psychologist testified there is no guarantee Julie will not again engage in sexual abuse, and she needs treatment to minimize the risk. Julie admits she sexually abused the young girl in question but seeks to minimize her contact contending the abuse was not as substantial as set forth in the record.

We agree that there is a difference between the opinion of the experts as to whether Julie should have further counseling for her daughters' benefit. There is no evidence suggesting she has ever sexually abused her daughters, although there is evidence the sexual abuse of Morgan took place in her daughters' presence. The trial court elected not to make counseling a condition of her visitation, and we defer to the trial court on this issue.

James has requested attorney fees on appeal. We award him $500. Costs on appeal are taxed to Julie.

**AFFIRMED.**