In re the MARRIAGE OF James Richard CROTTY and Michelle Marie Crotty.

Upon the Petition of

James Richard Crotty, Petitioner–Appellant/Cross–Appellee,

And Concerning

Michelle Marie Crotty, Respondent–Appellee/Cross–Appellant.

Nos. 97–1252.

Court of Appeals of Iowa.

June 24, 1998.

Stephen M. Terrill of Terrill & Martens Law Administration Office, Ames, for appellant.

Todd E. Babich of Babich, McConnell & Renzo, P.C., Des Moines, for appellee.

Heard by SACKETT, P.J., and HUITINK and STREIT, JJ.

SACKETT, Presiding Judge.

Petitioner-appellant James Richard Crotty appeals, and respondent-appellee Michelle Marie Crotty cross-appeals, challenging the economic and custodial provisions of their dissolution decree. James contends the district court (1) should have awarded him primary physical care of the minor children; (2) should have made other visitation provisions; and (3) did not properly calculate his income for child support purposes. On cross-appeal, Michelle contends the district court (1) should have awarded her more alimony; and (2) should have awarded her additional attorney fees. Michelle also requests attorney fees for the services rendered in this appeal. We modify the visitation schedule. We affirm on all other issues.

James and Michelle married on June 24, 1994. Their first child, Michael, was born before the marriage on April 5, 1993. The parties' second child, Katherine, was born on June 26, 1996. Katherine was two months premature and weighed only one pound seven ounces. Katherine remained in the hospital throughout the summer of 1996. When she was released, she did not yet weigh five pounds.

After Katherine's birth, James filed a petition for dissolution of marriage. On August 5, 1996, James filed a petition for temporary custody of Michael. Temporary orders were entered in the dissolution awarding temporary custody of the children to Michelle and ordering James to pay Michelle $1750 per month child support.

The matter came on for hearing. The district court awarded primary physical care of the children to Michelle. Michelle indicated she intended to move to Napersville, Illinois, and live with her parents, taking the children with her. The trial court limited James's visits with Katherine to Illinois for the nine months following entry of the decree. The court reasoned that Katherine was frail and should not be transported until that time. After nine months, the court provided Katherine could travel to Iowa for visitation. James was ordered to pay $2250 per month in child support and $500 per month in alimony for a period of six months.

The parties had signed a premarital agreement which is not challenged. The district court concluded James had an annual earning capacity of $250,000. The court awarded James all real and personal property identified in the premarital agreement as staying with James. Certain other assets were divided. The property division is not challenged. The court ordered James to pay $5000 toward Michelle's attorney fees.

■ James contends he should have primary physical care of the children. We review de novo. Iowa R. App. P. 4; *In re Marriage of Riggert*, 537 N.W.2d 789, 791 (Iowa App.1995); *In re Marriage of Harris*, 499 N.W.2d 329, 330 (IowaApp.1993).

■ James's primary concern is Michelle and the children will be with her parents in Illinois and he contends Michelle's parents are hostile to him. James is correct when he advances the Iowa courts do not tolerate hostility exhibited by one parent to the other. In *In re Marriage of Rosenfeld*, 524 N.W.2d 212 (IowaApp.1994), we addressed a situation where parents sought to put the other parent in an unfavorable light and considered it a factor in modifying a custody award. *Id.* at 215. Other cases have addressed similar complaints under other circumstances. *See In re Marriage of Udelhofen*, 444 N.W.2d 473, 474–76 (Iowa 1989); *In re Marriage of Leyda*, 355 N.W.2d 862, 865–67 (Iowa 1984); *In re Marriage of Wedemeyer*, 475 N.W.2d 657, 659–60 (Iowa App.1991). The hostile conduct need not come only from the custodial parent. In *Rosenfeld*, we considered the activities of the custodial father's current wife in affirming a district court decree modifying custody and transferring it to the mother. *Rosenfeld*, 524 N.W.2d at 215–16.

Michelle has a responsibility to assure her parents will not interfere with James's relationship with his children. Michelle's parents have some animosity toward James. They have reason to be upset with his failure

to provide financial support following Michael's birth. While we do fault James in this regard, we also consider his subsequent action in providing financial support for his children. There is no showing Michelle's parents have engaged in such conduct so as to deny Michelle custody if other factors support the award. In assessing a custodial award, we look at more.

■ The question is always which parent will do the better job of raising the children. *In re Marriage of Rodgers,* 470 N.W.2d 43, 44 (Iowa.App.1991). We look to the factors set forth in *In re Marriage of Winter,* 223 N.W.2d 165, 166–67 (Iowa 1974). We are dealing with the lives of Michael and Katherine, not their parents. *See Halstead v. Halstead,* 259 Iowa 526, 535, 144 N.W.2d 861, 866 (1966).

■ We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses. Iowa R.App. P.14(f)(7). Yet, we are not bound by these determinations. *Id.* We base our decision primarily on the particular circumstances of the parties before us. *In re Marriage of Weidner,* 338 N.W.2d 351, 356 (Iowa 1983). The interests of these children are the primary consideration. *See In re Marriage of Vrban,* 359 N.W.2d 420, 424 (Iowa 1984); *Neubauer v. Newcomb,* 423 N.W.2d 26, 27 (Iowa App. 1988). We give consideration to each parent's role in child raising prior to a separation in fixing primary physical care. *See In re Marriage of Love,* 511 N.W.2d 648, 650 (Iowa App.1993); *In re Marriage of Fennell,* 485 N.W.2d 863, 865 (Iowa App.1992). Though we do not award custody based on hours of service for past care, we attempt to determine which parent will in the future provide an environment where the child is most likely to thrive. *In re Marriage of Engler,* 503 N.W.2d 623, 625 (Iowa App. 1993).

■ A child custody evaluation found both parents' commitments to their children strong. The evaluator found they had difficulty communicating. He recommended Michelle be the primary care parent and visitation provisions be specific. James contends the evaluator did not consider in making a recommendation that Michelle would move to Illinois. We have considered this factor in assessing the weight to be given the evaluator's recommendation.

Michelle's decision to move from Ames where James could continue to be substantially involved in assisting with bringing up their children deprives James of close association with his children. It also results in the children spending segments in their lives riding between Ames and Chicago. Michelle's move was motivated by the desire to be close to her parents. The result is her parents' influence on these children now becomes greater than their father's influence. Iowa courts had historically recognized society's mobility and had not fixed or changed custody based on one party's move from an area where both parents resided absent other circumstances. *See Vrban,* 359 N.W.2d at 425; *In re Marriage of Frederici,* 338 N.W.2d 156, 161 (Iowa 1983). These cases pre-date legislative changes providing if a parent is to relocate the residence of a minor child to a location one hundred fifty miles or more from the residence of the minor child at the time custody was granted, the court may consider the relocation a substantial change in circumstances. *See* Iowa Code § 598.21(8A) (Supp.1997); *In re Marriage of Mayfield,* 577 N.W.2d 872, 874 (Iowa App. 1998). This legislative change is compatible with other legislative changes in the past decade focusing on the opportunity for substantial parental involvement in a child's life, even when there has been a marriage dissolution. *Id.*

Michelle had job opportunities in Ames. James was ordered to pay child support in an amount adequate for her to care for the children without her parents' financial support. James's employment makes it difficult for him to leave Ames. We consider Michelle's move depriving James of close association with his children as a factor in assessing who should be the physical custodian.

Michelle has been the primary care giver. She cared for Michael following his birth without financial support from James. She has been the parent most attentive to the children's needs and has focused on their care. She alone assumed responsibility for Katherine in the difficult weeks following her birth. James did, after Katherine's birth,

commence accepting responsibility for Michael and they have bonded. James has spent little time with Katherine. Considering all these factors, we find no valid reason to disagree with the trial court award of physical care and affirm it.

James contends if he is not given primary physical care, his visitation schedule should be modified. He contends the district court's ruling carves out his visitation with Katherine separately from Michael.

An extremely detailed visitation schedule was entered. Basically, James was given visitation every other weekend with both children from 5 p.m. on Thursday to 8 p.m. on Sunday, and an additional week with James four months of the year until Michael starts kindergarten, when he shall have both children for three weeks in the summer. Katherine's visitation was limited for the first nine months following entry of the decree. James has challenged this limitation. The issue is now moot, and there is no compelling reason to address it. See Watts v. State, 456 N.W.2d 683, 683 (Iowa App.1990). James was ordered to provide all transportation. James also asks for a neutral pick-up point.

Some modification of the visitation schedule is necessary for the children's benefit and in fairness to James and to accommodate his work schedule. We modify to provide that the time for the first visitation of each month shall be extended to commence at noon on Thursday, until Michael reaches school age, at which time that visitation shall commence at 4 p.m. on Friday. On the first visitation of the month, James shall be responsible for transportation of the children from Napersville, Illinois, to Ames. James shall then deliver the children to an agreed location in Davenport, Iowa, by 2:00 p.m. on Sunday. Michelle shall be responsible for picking the children up in Davenport. In all other respects, we affirm the visitation provisions made by the trial court.

James further contends the district court abused its discretion in fixing his net income for child support purposes. He contends the court should not have considered the one-time sale of an asset he had at the time of marriage to determine his child support obligation. He claims his high income for 1996 reflects the one-time sale of a residential

development. He contends his actual net income is only $50,000 per year. James argues the income years the trial court utilized in fixing child support included land sales which exhausted the asset; consequently, this asset is not available to generate income in future years. James also advances the trial court should have considered loss carryovers because they reflected development costs for the land sold.

The question is what is James's net monthly income as defined by the guidelines. Before applying the guidelines, there needs to be a determination of the net monthly income of the custodial and noncustodial parent. See In re Marriage of Powell, 474 N.W.2d 531, 534 (Iowa 1991) (court must determine the parents' current income from most reliable evidence presented); In re Marriage of Lalone, 469 N.W.2d 695, 696 (Iowa 1991) (application of child support guidelines chart first involves determination of net monthly income of each parent); In re Marriage of Miller, 475 N.W.2d 675, 678 (Iowa App.1991) (first step in using the child support guidelines is to arrive at "net monthly income").

James's income fluctuates; consequently, it is equitable to consider more than one year's income. We determine it equitable to average a farmer's profits and/or losses for the previous three years and divide by twelve, representing the months in one year, to determine his gross monthly income as defined by the guidelines. In re Marriage of Cossel, 487 N.W.2d 679, 683 (Iowa App.1992). The trial court looked at the two past years' income figures in determining income as defined by the guidelines. We find no reason to disagree with the trial court's determination of James's income for child support purposes.

Michelle contends she should have been awarded additional alimony. The trial court awarded her $500 a month for six months.

Any form of alimony is discretionary with the court. In re Marriage of Ask, 551 N.W.2d 643, 645 (Iowa 1996); In re Marriage of Wessels, 542 N.W.2d 486, 490 (Iowa 1995). Before awarding alimony, the district court is required to consider the fac-

tors listed in Iowa Code section 598.21(3) (1997). These factors include (1) the length of the marriage; (2) the age, physical, and emotional health of the parties; (3) the property distribution made in the dissolution decree; (4) the educational levels of the parties; (5)the earning capacity of the party seeking maintenance; (6) the ability of the party seeking maintenance to become self-supporting at the standard of living enjoyed during the marriage; (7) the tax consequences to each party; (8) any mutual agreements by the parties concerning financial or service contributions; (9) the provisions of any antenuptial agreement; and (10) any other factors the court determines relevant on a case-by-case basis.

■ This was a short-term marriage. Michelle has a college degree, is employable, and is capable of being self-supporting. James has a larger net worth than Michelle, though it was accumulated prior to this marriage. We consider it in assessing his ability to pay. The alimony awarded was equitable and we affirm on this issue.

■ Michelle contends the district court should have ordered James to pay all of her $11,116.50 trial attorney fees, not just a portion of them. An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial position. *In re Marriage of Kern*, 408 N.W.2d 387, 390 (Iowa App.1987). The trial court did not abuse its discretion in awarding attorney fees.

■ Michelle further requests an award of appellate attorney fees. We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *In re Marriage of Castle*, 312 N.W.2d 147, 150 (Iowa App.1981). We award Michelle $1500 in appellate attorney fees. Costs on appeal are taxed to James.

**AFFIRMED AS MODIFIED.**