**IN THE COURT OF APPEALS OF IOWA**

No. 13-1757
Filed July 16, 2014

**IN RE THE MARRIAGE OF TRACY LYNN HOFFMAN
AND ERNST FRANKLIN HOFFMAN**

**Upon the Petition of
TRACY LYNN HOFFMAN,**
        Petitioner-Appellant,

**And Concerning
ERNST FRANKLIN HOFFMAN,**
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Polk County, Robert J. Blink,

Judge.


        A mother appeals from the order modifying the physical care provisions of

the former couple's divorce decree and denying her counterclaim seeking a

change in the visitation provisions and an increase in child support.  **REVERSED**

**AND REMANDED.**


        Eric G. Borseth of Borseth Law Office, Altoona, for appellant.

        Alexander E. Wonio of Hansen, McClintock & Riley, Des Moines, for

appellee.


        Considered by Danilson, P.J., and Potterfield and McDonald, JJ.

**MCDONALD, J.**

Tracy Lynn Bain, f/k/a Tracy Lynn Hoffman, appeals the district court's modification of the physical care and visitation provisions of her dissolution decree whereby the court transferred the physical care of her two minor children, M.H. and Z.H., from Tracy to her former husband Ernst ("Ernie") Hoffman. Upon our de novo review, we conclude Ernie did not carry his burden of establishing a substantial change in circumstances warranting modification of the decree or the ability to minister more effectively to the needs of the parties' children.

I.

Tracy and Ernie married in 1996, and they divorced in 2006. Two children were born to the marriage: M.H. in 1999 and Z.H. in 2002. Pursuant to a stipulation regarding custody and care, the parties were awarded joint legal custody of the children with primary care of the children to Tracy. While the dissolution case was pending, Tracy purchased a residence in Pleasant Hill, in southeastern Polk County, approximately one mile from the parties' marital residence. Her purpose in purchasing a residence in close geographical proximity to the former marital residence was to minimize disruption in the children's lives, including disruption to the children's schooling and extracurricular activities. Ernie also maintained a residence in the same general area to be near the children, to minimize disruption in the children's lives, and to facilitate visitation.

Since 2006, both Ernie and Tracy have remarried. Ernie married Dawn in 2008. They built a home in eastern Polk County to remain close to the children

and to minimize any disruption in the children's lives. In 2012 Tracy married Rob, who owns land near Albia, in Monroe County, approximately seventy miles from the parties' residences in Polk County. For some time during Tracy and Rob's courtship and marriage, they maintained two residences—hers in southeastern Polk County and his in the Albia area.

Shortly before Christmas 2012, without any meaningful discussion with Ernie, Tracy relocated with M.H. and Z.H. to Rob's home in Albia. The move required the children to change schools during the academic year, moving from the Southeast Polk Community School District to the Albia Community School District. The move restricted Ernie's ability to fully exercise the visitation rights awarded in the parties' decree and restricted Ernie's ability to attend the children's school functions and visit with them on a more frequent basis than that provided in the decree.

Ernie petitioned the court for modification of the decree, seeking primary physical care of M.H. and Z.H. The court appointed a guardian ad litem (hereinafter "GAL") for the children and tasked the GAL with preparing a report and recommendation for the court. In preparing the report, the GAL met with Tracy and Ernie, their respective spouses, and the children. The GAL also performed some research regarding the two school districts at issue. The GAL's report concluded there had been a substantial change in circumstances because of "the changes in the parenting schedule, the conflict between M.H. and her mom, the children's preference, and most importantly, the change in school district." The report recommended a change in primary care from Tracy to Ernie,

giving "significant weight to the children's preference and to the quality of the school district. Additionally, all of their extended family is in Des Moines, as are all of their health care providers."

The district court, relying in part on the GAL's report, granted Ernie's petition and awarded primary care of the children to Ernie with visitation to Tracy. The court found, among other things, the children's "educational, medical, and social needs seem to be better met in Polk County." The court also modified the decree to require Tracy and Ernie to share equally in any uninsured amount of medical expenses. Tracy timely filed this appeal.

## II.

"We review an order modifying a decree for dissolution of marriage de novo." *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014). "We give weight to the findings of the district court, particularly concerning the credibility of witnesses; however, those findings are not binding upon us." *Id.* (citation omitted).

## III.

## A.

Changing physical care of the children from one parent to another is one of the most significant modifications that can be undertaken in family law matters. *See In re Marriage of Thielges*, 623 N.W.2d 232, 236 (Iowa Ct. App. 2000). The party requesting modification must first establish a substantial change in material circumstances. A substantial change in circumstances is one that is more or less permanent, not contemplated by the court when the decree was entered, and

that affects the children's welfare. *See In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983); *Thielges*, 623 N.W.2d at 238. After establishing a substantial change in circumstances, the party seeking modification must also establish the ability to minister more effectively to the needs of the children. *See Frederici*, 338 N.W.2d at 158. This is a "heavy burden," and rightly so. *See Thielges*, 623 N.W.2d at 235-37; *In re Marriage of Rosenfeld*, 524 N.W.2d 212, 213 (Iowa Ct. App. 1994). To promote stability in the children's lives, our courts have concluded that "once custody of children has been determined, it should be disturbed only for the most cogent reasons." *Dale v. Pearson*, 555 N.W.2d 243, 245 (Iowa Ct. App. 1996).

Our courts have long recognized that physical relocation of the parent having primary care of the children, standing alone, is generally not a cogent reason warranting modification of the primary care relationship. *See id.* ("We live in a highly mobile society, and a move by one of the parties is not so unusual or substantial as to support a change in custody."). This general proposition was and is justified by several considerations. First, the primary caregiver's physical relocation is not a substantial change in the parties' legal circumstances outside the contemplation of the decretal court because the right of relocation is inherent in the award of primary care:

> [G]eographical proximity is not an indispensable component of joint custody, and . . . the parent having physical care of the children must, as between the parties, have the final say concerning where their home will be. This authority is implicit in the right and responsibility to provide the principal home for the children. The right would mean little if the other custodian could veto its exercise. Even with joint custody, therefore, the burden is on the parent

challenging removal to establish that the decree should be modified to preclude it.

*Frederici*, 338 N.W.2d at 159-160. Second, the general proposition merely recognizes the reality and necessity of mobility. *See In re Marriage of Crotty*, 584 N.W.2d 714, 717 (Iowa Ct. App. 1998) ("Iowa courts had historically recognized society's mobility and had not fixed or changed custody based on one party's move from an area where both parents resided absent other circumstances."). Third, the general rule "places greater importance on the stability of the relationship between [children] and the[ir] primary caregiver [than on] the physical setting of the child[ren]." *In re Marriage of Williams*, 589 N.W.2d 759, 762 (Iowa Ct. App. 1998); *see In re Marriage of Whalen*, 569 N.W.2d 626, 630 (Iowa Ct. App. 1997) ("While stability is important in a child's life, stability can be nurtured as much by leaving children with the same custodial parent as leaving them in the same neighborhood.").

Legislative changes have tempered the general rule to some extent. *See* 1997 Iowa Acts ch. 175, § 190. Iowa Code section 598.21D now provides:

> If a parent awarded joint legal custody and physical care or sole legal custody is relocating the residence of the minor child to a location which is one hundred fifty miles or more from the residence of the minor child at the time that custody was awarded, the court may consider the relocation a substantial change in circumstances.

The plain language of this statutory provision provides the modification court "may," but is not required to, find relocation of 150 miles or more a substantial change in circumstances. Section 598.21D "does not change the burdens of proof applicable to custody modification requests." *Thielges*, 623 N.W.2d at 237. The party seeking modification must still prove the requisite change in

circumstances and that he or she has the ability to minister more effectively to the well-being of the parties' children. *See id.* With these general propositions in mind, we turn our attention to the facts and circumstances of this case.

One of the primary factors in the GAL's recommendation was M.H.'s stated preference to live with Ernie. "[W]hen a child is of sufficient age, intelligence, and discretion to exercise an enlightened judgment, his or her wishes, though not controlling, may be considered by the court, with other relevant factors, in determining child custody rights." *Jones v. Jones*, 175 N.W.2d 389, 391 (Iowa 1970). M.H. is a teenager. Her preference to reside with Ernie seems considered. However, a child's preference is entitled to less weight in a modification action than would be given in an original custody proceeding. *See In re Marriage of Behn*, 416 N.W.2d 100, 102 (Iowa Ct. App. 1987); *In re Marriage of Zabecki*, 389 N.W.2d 396, 399-400 (Iowa 1986). This is particularly true where, as here, the preference to reside with one parent seems to be rooted in resistance to relocation. *See generally In re Marriage of Montgomery*, 521 N.W.2d 471, 474 (Iowa 1994) (stating "the fact a move is traumatic for children is not a sufficient reason to justify shifting physical care to the nonmoving joint custodian"); *In re Marriage of Smith*, 491 N.W.2d 538 (Iowa Ct. App. 1992) (affirming denial of modification where children were relocated from urban area to rural area and children were unhappy). Further, as a general rule, modification is not warranted where the only or primary consideration is the child's preference. *See, e.g., In re Marriage of Stoos*, No. 06-0365, 2006 WL 3313954, at *2 (Iowa Ct. App. Nov. 16, 2006).

Related to M.H.'s preference to reside with Ernie, the GAL also reported that M.H. and Tracy's relationship was strained to a great degree, as evidenced by one incident in which Tracy had to contact law enforcement in resolving a situation with M.H. While the present relationship between M.H. and Tracy is strained, this does not appear to be a long-standing or permanent change. *See Frederici*, 338 N.W.2d at 158 (requiring a more or less permanent change in circumstances). While the relationship between the two has occasionally escalated in inappropriate ways, the GAL did not conclude the relationship was unhealthy or irreparable, noting "[a]s with any parents, there are bumps in the road, but overall, they do very well together." There was no evidence that the present strain in this mother-daughter relationship was long-term.

The primary factor in the GAL's recommendation to change the physical care responsibilities was the GAL's conclusion that the Southeast Polk Community School District offers more resources and better opportunity for the children than the Albia Community School District. The GAL's finding was based on her interviews with unidentified educators and her independent review of graduation rates and college entrance statistics on the school districts' respective websites. We conclude the difference, if any, between the quality of the two schools is not material and does not constitute a substantial change in circumstances.

The data regarding graduation rates and college matriculation rates does not necessarily tell us anything about the quality of instruction within the two school districts. First, the differences in some metrics do not appear statistically

meaningful or legally material. For example, the GAL reported that Southeast Polk students have a higher percentage of 11th grade students proficient in math (74.18% vs. 73.37%). Further, the data was not one-sided. For example, the GAL reported Albia has a higher percentage of 8th grade students proficient in math (80% vs. 77.58%). In short, the data was mixed or inconclusive at best. Further, because the data cited by the GAL was static, it fails to tell us anything meaningful about the trends within each district and the persistence of any meaningful distinction between the performance of the students within each district. Most important, however, the GAL's conclusion that the data supported the conclusion that one district was superior to the other is not sound. The GAL's report did not account for socioeconomic differences (such as race, ethnicity, marital status of the parents, educational attainment of the parents, household income, etc.) between the two school districts. Relatedly, the GAL's report did not account for the differences between a large urban district and a small rural school district and the potentially different aspirations of the students within such districts as measured by plans for educational advancement, occupational choice, and future income expectations. In sum, the data, in particular college entrance data, may not reflect on the quality of instruction within the respective districts so much as the different expectations and aspirations of the students and parents within the districts.

The GAL's report also focused greatly on the data provided on the schools' website without accounting for other factors that might relate to the overall educational experience of the children. For example, the GAL report did

not account for the Albia district's correspondence program with Indian Hills Community College that provided educational opportunity in addition to that provided by Albia. While the GAL's report did note that Southeast Polk had a more robust extracurricular and athletics program, the report did not take into consideration whether the children would actually be able to participate in those activities and sports in a larger and more competitive school. At trial, the GAL conceded the children would have greater opportunity to meaningfully participate in extracurricular activities at Albia. Indeed, both children were actively involved in extracurricular activities in Albia after the relocation. We are reluctant to conclude a party can establish a substantial change in circumstances merely because a parent moves his or her children from an urban school with greater resources to a rural school with fewer resources.

Another relevant consideration in determining whether there has been a substantial change in circumstances is the motivation for relocation. Generally, where the parent's relocation is motivated by legitimate reasons and not by a desire to undermine or damage the non-custodial parent's relationship with the children, the relocation, without more, will not constitute a substantial change in circumstances. *See id.* at 160. *But cf. In re Marriage of Loftin*, No. 11-0508, 2011 WL 5394445, at *4 (Iowa Ct. App. Nov. 9, 2011) (finding modification was warranted where mother moved and actively interfered with child's relationship with father). Here, Tracy's move from Polk County to Monroe County was to live in the same house as her new husband—it was not motivated in any way by a desire to undermine Ernie's relationship with the children. Whether, and how, to

consolidate households with a new spouse is a choice often faced by divorced persons who serve as the primary caregiver. Ultimately, the decision to live under the same roof as one's new spouse is a legitimate reason for relocation. *See generally Thielges*, 623 N.W.2d at 238 (providing legitimate reasons for a parent to relocate, including the opportunity to simply get a "fresh start").

Another consideration is whether relocation interferes substantially with visitation. Tracy's relocation in this case also does not interfere substantially with Ernie's ability to have access to the children. *See Thielges*, 623 N.W.2d at 238 (focusing on valid reasons for move and that move was not predicated on an attempt to limit visitation). The distance between the parents' homes is approximately seventy miles. The commute would not require a great deal of time. The record reflects that Tracy has been more than willing to facilitate visitation and access by picking up the children in Des Moines, on occasion, and to meet at a halfway point between the homes. Her work schedule as a nurse would allow her to continue to facilitate transportation. Ernie is employed as an emergency room physician. While he works long shifts, he works fewer days than the typical person. Ernie testified he has more than fifteen days off per month. He would thus have greater opportunity to attend the children's activities in Albia and meet with them there without conflicting with his work schedule. At trial, he testified that he chose not to exercise that ability and see the children because he simply did not agree with them relocating to Albia. Going forward, Ernie will have to change that mindset and continue to support the children.

Although there was evidence of strain between Tracy and M.H. and the difference in educational opportunity between the two school districts, the only real issue in this case was Tracy's relocation to Albia and the impact it would have on Ernie. The GAL conceded this during trial: "Q: And the only change, then, that you found to warrant your recommendation is the move to Albia; is that also correct? A. Yes." The district court also recognized the same when it stated to the parties during trial: "We're here because of one singular reason: a geographical move." Our courts generally have not changed primary care where the only issue is the change caused by the primary caregiver relocating a relatively short distance from the former home. *See*, *e.g.*, *Smith*, 491 N.W.2d at 541 (denying modification where parent moved 112 miles within the state); *Ticknor v. Harms*, No. 12-2299, 2013 WL 4012036, at *2-3 (Iowa Ct. App. Aug. 7, 2013) (affirming denial of modification where mother moved forty miles away to a smaller school district); *In re Marriage of Friedman*, No. 12-1978, 2013 WL 2145778, at *2-3 (Iowa Ct. App. May 15, 2013) (affirming denial of modification where mother moved ninety-three miles and stating, "[i]n custody modification cases, stability is the trump card").

We recognize that custody determinations must be made on the specific facts and circumstances of the case presented; however, there is a materially indistinguishable case that provides some guidance here—*In re Marriage of Whalen*, 569 N.W.2d 626 (Iowa Ct. App. 1997). In *Whalen*, the court held the father had not shown a substantial change in circumstances. *Whalen*, 569 N.W.2d at 630. There, as here, the mother had primary care of the children. *Id.*

at 628. The mother relocated the children farther away from the father to be closer to her new spouse. *Id.* The children in that case each expressed a preference to live with their father in the hometown they knew so they could be in the same schools, with the same friends, and close to family. *Id.* at 629. There, as here, the mother moved without great discussion with the husband. *Id.* at 628-29. Like Ernie, the father in *Whalen* was caring and "had substantial involvement with the children." *Id.* at 630. While calling it a close case, the court concluded that modification was not warranted. *Id.* We reach the same conclusion here: Ernie has not carried his heavy burden of establishing a substantial change in circumstances.

Even if relocation is considered a substantial change in circumstances, courts will not modify care provisions without a strong showing that one home offers superior care to the children. *See Crotty*, 584 N.W.2d at 717-18 (affirming denial of modification where mother moved to Illinois but had been primary care taker); *In re Marriage of Mayfield*, 577 N.W.2d 872, 874 (Iowa Ct. App. 1998) (affirming denial of modification of care provision where mother moved out-of-state but child was "flourishing" in her care). The question is not which home is better; the question is whether the party seeking modification can offer the children superior care. *See In re Marriage of Morton*, 244 N.W.2d 819, 821 (Iowa 1976) ("The parent seeking to take custody from the other must show some superior claim based on his or her ability to minister, not equally, but more effectively to the childrens' well-being."); *Rosenfeld*, 524 N.W.2d at 213 ("If both parents are found to be equally competent to minister to the children, custody

should not be changed."). Where the evidence shows that both parents can provide equal care for the children, then modification should be disallowed. *See Smith*, 491 N.W.2d at 541; *In re Marriage of Carroll*, No. 02-1097, 2003 WL 1052944, at *1 (Iowa Ct. App. Mar. 12, 2003) (affirming denial of modification where mother moved out-of-state with children but father failed to establish he could provide superior care).

We conclude that Ernie has also not proved the ability to minister more effectively to the children's needs. The evidence shows only that all of the parents in this family care for, and can provide for, these children. The GAL found Tracy and Ernie to be honest and forthright. The GAL also found Tracy and Ernie "have worked together for the best interest of their kids." Dawn and Rob, the stepparents, have good relationships with the children and are supportive of the children in their activities. As the GAL noted:

> M.H. and Z.H. are blessed with two good homes, as well as two parents and two step-parents who love them very much. For the most part, the parents (all four of them) work well together for the benefit of the kids, and there seems to be fairly good communication between them. . . . Both homes are very comfortable for the kids, and both parents are more than capable of providing for the kids' basic needs.

Not only is Tracy capable, she has done a commendable job of parenting the children. She organizes and is heavily involved in the children's extracurricular activities, primarily their passion for rodeo and barrel-racing horses. Her home in Albia will allow the children to house and care for their horses and practice in these events. Ernie has also done a commendable job of parenting these children. All of the parents involved in this family should take comfort in knowing that these children will be well cared for in both households. We cannot

conclude, however, that Ernie established the ability to minister more effectively to the children's needs.

We understand that Ernie is concerned with losing some amount of contact with his children. Tracy cross-appeals the district court's denial of her request for modification of the visitation provisions of the decree. We conclude that Tracy's relocation to Albia does constitute a sufficient change in circumstances to warrant modification of the visitation provisions of the decree. *See In re Marriage of Salmon*, 519 N.W.2d 94, 95-96 (Iowa Ct. App. 1994) (stating "a much less extensive change in circumstances is generally required in visitation cases"). The district court can fashion the visitation schedule to accommodate the greater geographic distance between Ernie and his children. With cooperation between the parties, this court is confident Ernie and the children will continue to enjoy a close and meaningful relationship. *See In re Marriage of Westcott*, 471 N.W.2d 73, 76 (Iowa Ct. App. 1991) (denying petition to modify where mother moved out of state, where move was not motivated by intent to interfere with father's relationship, and where visitation had been adjusted to accommodate the greater geographic distance).

We therefore reverse the district court's modification of the custody provision of the divorce decree and return primary care of M.H. and Z.H. to Tracy. We also remand to the district court to enter a visitation schedule.

## B.

Tracy next contends the district court erred in requiring uninsured medical expenses of the children to be apportioned 50/50. Tracy correctly points out that

Iowa Code section 598.21B and Iowa Court Rule 9.12(5) require these expenses be apportioned proportionally according to the parties' income after the custodial parent pays the first $250 per year per child up to a maximum of $800 per year for all children. On remand, the district court should enter an award in accord with the rule and the parties' respective financial positions.

C.

With the reversal of the district court decision's concerning custody, Tracy asks that we require Ernie to pay child support consistent with the Child Support Guidelines. *See* Iowa Code § 598.21B. Prior to the modification, Ernie was paying $2000/month in child support. Tracy argues the guidelines require Ernie to pay support of $2988.30/month, a 10% variation constituting a substantial change of circumstances under Iowa Code section 598.21C(2)(a) that gives our court the right to modify child support. We remand to the trial court to determine Ernie's child support obligation under the guidelines commencing the date of the decree from which appeal was taken.

D.

Tracy contends the district court erred in not awarding her trial attorney fees of $16,584. "Trial courts have considerable discretion in awarding attorney fees." *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994). "We review a district court's decision on attorney fees for abuse of discretion." *In re Marriage of Michael*, 839 N.W.2d 630, 635 (Iowa 2013). Having reviewed the record, we cannot say the trial court abused its discretion in declining the fee award.

Tracy also asks for an award of appellate attorney fees of $7625. "An award of appellate attorney fees is within the discretion of the appellate court." *Spiker v. Spiker*, 708 N.W.2d 347, 360 (Iowa 2006). "Whether such an award is warranted is determined by considering 'the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal.'" *Id.* (citation omitted). We determine an award of appellate attorney fees is warranted in this case, and award Tracy $7625.

IV.

For the foregoing reasons, we reverse the judgment of the district court and remand this matter for further proceedings not inconsistent with this opinion. We do not retain jurisdiction over this matter. Costs on appeal are taxed equally to the parties.

**REVERSED AND REMANDED.**