# IN THE COURT OF APPEALS OF IOWA

No. 14-0312
Filed June 10, 2015

**NICHOLAS B. GENGLER,**
        Plaintiff-Appellee,

**vs.**

**TRUDY A. WETROSKY,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Plymouth County, James D. Scott,

Judge.


        Trudy Wetrosky appeals the district court's modification of the terms of her

daughter's custodial arrangement.  **AFFIRMED.**


        Tara S. Vonnahme of Vonnhame Law, P.C., Sioux City, for appellant.

        Elizabeth A. Rosenbaum, Sioux City, for appellee.


        Considered by Vogel, P.J., and Potterfield and Mullins, JJ.  Scott, S.J.,

takes no part.

**POTTERFIELD, J.**

Trudy Wetrosky appeals the district court's modification of the terms of her daughter's custodial arrangement. The modification awarded physical care to Nicholas (Nick) Gengler, the girl's father.

### I. Factual and Procedural Background

Trudy and Nick had a daughter, B.G., in 2003. The parties were never married and eventually separated. In 2008, the parties stipulated to an agreement regarding B.G.'s custody. The stipulation provided for joint legal custody and granted Trudy physical care. The district court adopted the stipulation in full in the decree entered on November 5, 2008. At that time, each party had married. Nick lived in Sioux City with his wife in the house in which he still resides. Trudy lived with her husband, Paul Hassman, in Ankeny, Iowa. The stipulation relied on the parties' "long distance parenting plan" because travel between Ankeny and Sioux City required a car trip of nearly two hundred miles in one direction. Nick consistently exercised his visitation according to the stipulation.

The following year, Trudy separated from her husband. She and her two children[1] left Ankeny and moved to Le Mars, Iowa. At that time, Trudy began dating a man named Wade. At first, Trudy and the children stayed with Trudy's mother. In August, they moved into their own apartment. The children attended school in Le Mars. In early 2010, Trudy separated from Wade. She began to date Ben, a resident of Sloan, Iowa. She and the children moved to Sloan and

---

[1] Trudy had a second child with Hassman. Trudy had physical care of the second child at that time, both B.G. and the second child moved each time with Trudy. The second child is not part of this appeal.

lived in a residence owned by Ben. The children changed schools for a second time. Ben moved in with them later that year. They all moved again to a different residence in Le Mars owned by Ben in early 2011. In 2012, Trudy and Ben separated, but she continued to reside with her children in the residence he owned. In 2013, Trudy began dating Chad K., who soon moved into Ben's residence with Trudy and the children. Chad K. was arrested on a fifth operating while intoxicated (OWI) charge, and Trudy broke off her relationship with him. She then took the children to stay with her next paramour, Chad P., in Remsen, Iowa while she arranged for housing back in Le Mars. The children again changed schools. She and the children moved into their own residence in Le Mars, where they resided at the time of the trial. They sometimes stayed overnight at Chad P.'s residence in Remsen. Chad P. has a restraining order against him due to past allegations of violence. Trudy witnessed Chad P. punch a hole in the wall of his kitchen, but she believed it was "an okay way to vent his anger."

In 2013, Nick began to approach Trudy about his concerns with her rapid changes to and decisions about her relationship status and places of residence. He expressed frustration at the effect those changes had on B.G. Trudy was living with Chad K. in Ben's residence at the time of these conversations. At Trudy's request, Nick waited for some time to allow her to improve the situation and demonstrate stability for B.G.; however, soon thereafter, Trudy separated from Chad K. and took the children to live temporarily with Chad P. Nick then filed a petition to modify the physical care provision of the stipulation.

The district court held a trial on the matter on February 13, 2014. The court received evidence regarding Trudy's changes in residence and paramours. It heard evidence without objection from Trudy showing she had changed employers six times since the decree, twice because she was fired. It also received evidence showing Trudy failed to reliably inform Nick of impending changes, including moves to new residences, enrollment in new schools, or paramours moving in with B.G. and her mother. Other notable evidence included Trudy's failure to recognize the need for stability and structure in B.G.'s life because of the child's attention deficit issue, her lack of proper supervision when B.G. was involved in a four-wheeler crash, her failure to ensure B.G. regularly attended school and arrived on time, and her failure to identify B.G.'s severe dental issues that ultimately necessitated two extractions.

The court heard testimony from B.G.'s therapist stating B.G. has been diagnosed with A.D.H.D., requires medication and special attention, and is classified as a special needs child. The therapist testified B.G. needs consistency and stability to combat anxiety, which has been inflamed due to continuing changes to her places of residence, her schools, and her mother's relationships. She testified Nick's home is the best environment for B.G.

The district court granted the requested modification and awarded Nick physical care of B.G. Trudy appeals.

**II. Standard of Review**

We review the record in a custody modification proceeding de novo. *In re Marriage of Zabecki*, 689 N.W.2d 396, 398 (Iowa 1986). We give weight to the

district court's findings of fact, particularly as to credibility determinations. *In re Marriage of Hynick*, 727 N.W.2d 575, 577 (Iowa 2007).

### III. Discussion

> To change a custodial provision of a . . . decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the child[]'s best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the child[]. A parent seeking to take custody from the other must prove an ability to minister more effectively to the child[]'s well being. The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons.

*In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).

On appeal, Trudy argues (1) there has been no substantial change since the original decree implementing the parties' stipulation; (2) any change in circumstances would have been contemplated at the time of the decree; (3) Nick failed to prove he can minister more effectively to B.G.'s needs; and (4) the district court failed to specifically make a finding of a "cogent reason" for the modification.

We acknowledge "Iowa courts . . . historically recognized society's mobility and had not fixed or changed custody based on one party's move from an area . . . absent other circumstances." *In re Marriage of Crotty*, 584 N.W.2d 714, 717 (Iowa Ct. App. 1998). However, there are other circumstances in this case. First, Trudy moved with her children not once, but four times in five years. This does not include the several occasions in which they moved in with Trudy's mother or paramour on a short-term basis while she made other living

arrangements. The first move—from Ankeny to Le Mars—was a significant one, and when the physical-care custodian "relocate[s] the residence of the minor child to a location [that] is one hundred fifty miles or more from the residence of the minor child at the time that custody was awarded [as is the case here], the court may consider the relocation a substantial change in circumstances." Iowa Code § 598.21D (2013). Additionally, "[a] decision by a joint custodial parent with physical care . . . to change residences is the kind of decision the other joint custodian has a right to be consulted about." *In re Marriage of Hoffman*, ___ N.W.2d ___, 2015 WL 2137550, at *5 (Iowa 2015). Nick was not consulted on each move in advance and, according to his testimony, sometimes he was not even notified that a move was taking place.

Second, Trudy's paramour has changed with relative frequency. B.G.'s therapist testified B.G. is confused and anxious by the constant changes. B.G. builds relationships with her mother's paramours, only to have those men permanently removed from her life in short order. The record indicates B.G. may be unclear as to where she is staying from night to night: in her own residence, in her mother's paramour's residence, or in her grandmother's residence.

All these factors in the aggregate show a substantial change in circumstances since the parties' initial stipulation. At the time of the stipulation, it appeared Trudy could provide stability and consistency for B.G. with her marriage and her home life in Ankeny. Since that time, B.G. has been subjected to a transient lifestyle that is not fit for her special needs. Her therapist's testimony demonstrates the harm she suffers as a result. These changes were not within the contemplation of the court or the parties at the time of the initial

decree. Nick has demonstrated long-term stability in his life. He has resided in the same house with his wife and stepchildren since the entry of the decree. He has shown sensitivity to B.G.'s special needs. The district court's findings demonstrate a cogent reason for granting his request for modification: the negative effects of B.G.'s lifestyle—moving from home to home and father-figure to father-figure—on her well-being are apparent in the record, and modifying physical care is necessary to mitigate and correct that harm.

**IV. Conclusion**

It is clear Trudy sincerely loves and cares for B.G., but the circumstances in her life have been harmful to her daughter, who needs special care, consistency, and stability. On our de novo review, we agree with the district court; there has been a substantial change in circumstances not contemplated at the time of the initial decree. Nick has demonstrated his ability to more effectively minister to B.G.'s well-being. The modification of physical care is necessitated by a cogent reason: the establishment of order in B.G.'s life. We therefore affirm the district court.

Each party asks this court to award it appellate attorney fees and costs. Because we share the district court's sentiment—this is a close and difficult case—we exercise our discretion to order each party to pay its own appellate attorney fees and to share costs equally.

**AFFIRMED.**