# IN THE COURT OF APPEALS OF IOWA

No. 15-0251
Filed March 23, 2016

**DIANNA KAYE ERICKSON,**
    Petitioner-Appellee,

**vs.**

**DOUGLAS DALE BLAKE,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Jackson County, Paul L. Macek,

Judge.

Douglas Blake appeals from the decree granting the parties joint physical

care of their child.  **AFFIRMED.**

Sandra P. Trevino of Hammer, Simon & Jensen, P.C., East Dubuque,

Illinois, for appellant.

Dianna Kaye Erickson, pro se, for appellee.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

Douglas Blake appeals from the court's decree for custody, visitation, and support, which grants Douglas and Dianna Erickson joint physical care of their child.[1] Douglas argues joint physical care is not in the child's best interests and advocates that he be granted physical care of the child instead. He further argues the trial court improperly considered testimony by witnesses Dianna failed to disclose before trial and admitted into evidence undisclosed exhibits, which amounts to reversible error.

We review district court decisions regarding child custody de novo. *McKee v. Dicus*, 785 N.W.2d 733, 736 (Iowa Ct. App. 2010). We are not bound by the district court's fact findings. *Id.* However, because the district court has the opportunity to listen to and observe the parties and witnesses, we give weight to those fact findings, especially those concerning witness credibility. *Id.* Our overriding consideration is the child's best interests. *Id.* We base our decision on the unique circumstances of each case. *See In re Marriage of Crotty*, 584 N.W.2d 714, 717 (Iowa Ct. App. 1998). "Though we do not award custody based on hours of service for past care, we attempt to determine which parent will in the future provide an environment where the child is most likely to thrive." *Id.*

Although Douglas complains the court admitted testimony and exhibits into evidence that Dianna failed to disclose to him before trial, we note custody determinations are made in equity. *See Schott v. Schott*, 744 N.W.2d 85, 88 (Iowa 2008) ("A court of equity has inherent power and jurisdiction in all proceedings involving the custody and care of minor children."). As such, the

---

[1] Dianna did not file an appellate brief.

district court properly withheld ruling on Douglas's objections to facilitate our de novo review of the entire record. *See Davis v. Roberts*, 563 N.W.2d 16, 20 (Iowa Ct. App. 1997). The trial court stated as much at trial and in its ruling:

> [Dianna] offered exhibits A through G, inclusive. Exhibits A and B were admitted. Exhibits C through G were admitted for the purposes of the record of the case. [Douglas] objected to these exhibits on the basis that they had not been previously disclosed pursuant to local rule and, further, there was no foundation for these exhibits. The court, on the record, stated that it would not consider these exhibits but that they were admitted solely for the purpose of the record. [Douglas] had no opportunity to view these records in advance in order to prepare his case, and further, there was no foundation that these records were authentic.

To the extent any evidence was improperly considered by the district court, reversal is not required given our de novo review of the record on appeal. *See In re Marriage of Anderson*, 509 N.W.2d 138, 142 (Iowa Ct. App. 1993) (holding there is no need to rule on admissibility of evidence because the court did not consider the challenged evidence in its de novo review).

In making custody determinations, we apply the criteria found in Iowa Code section 598.41 (2013). *See* Iowa Code § 600B.40. Our objective is to place the child in the environment most likely to promote a healthy physical, mental, and social maturity. *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). The court must fashion a child-custody arrangement that will afford "the opportunity for the maximum continuing physical and emotional contact with both parents" and "will encourage parents to share the rights and responsibilities of raising the child unless direct physical harm or significant emotional harm to the child, other children, or a parent is likely to result from such contact with one parent." Iowa Code § 598.41(1)(a).

The court was required to consider joint physical care because Dianna requested it. *See id.* § 598.41(5)(a) (stating joint physical care is to be considered by the court if joint legal custody is awarded and either parent requests it). In determining whether to award joint physical care, the court must consider the following factors:

> (1) "approximation"—what has been the historical care giving arrangement for the child between the two parties; (2) the ability of the spouses to communicate and show mutual respect; (3) the degree of conflict between the parents; and (4) "the degree to which the parents are in general agreement about their approach to daily matters."

*In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007) (quoting *Hansen*, 733 N.W.2d at 697-99).

The trial court granted joint physical care after determining "neither party is superior to the other in respect to parenting," finding instead the parties are "essentially equal." While the parties have had conflict, the court noted both parents possessed "the skills and ability to communicate with each other." After finding the child needs both parents "in equal measure," the court determined joint physical care was in the child's best interests.

Douglas claims joint physical care is not in the child's best interests, citing the parties' history of conflict. Undoubtedly, there has been a strain in the parties' relationship during the pendency of the custody proceedings. However, the trial court indicated it believed the tension between the parties was caused in large part by the custody proceedings and would resolve once the proceedings concluded, allowing the parties to focus on the child's best interests rather than tactical maneuvering. The court further determined that a "specific and precise"

custody schedule would reduce the potential for conflict to arise. We concur in this assessment.

We further note Douglas's role in contributing to the conflict. During an argument between the parties in April 2013, Douglas alleges Dianna grabbed him by the throat while he held their child. Douglas called the police. That decision led to the issuance of no-contact orders between the parties, which complicated custody exchanges and, in turn, further exacerbated the tension between the parties.

Douglas also claims Dianna's domestic abuse militates against joint physical care. However, Douglas has failed to establish a history of domestic abuse perpetrated by Dianna. Although Douglas alleges Dianna attacked him without provocation in April 2013, there is no evidence of any domestic abuse between the parties before or after this incident. The trial court found Douglas's claim that he was in fear of Dianna was "not credible" and further determined Douglas maintained the no-contact order "to manipulate this situation." On this record, Douglas has failed to establish a history of domestic abuse to weigh against joint physical care, given the isolated nature of the incident and Douglas's lack of credibility on the matter.

Douglas advocates that he should be granted physical care of the child, arguing he is best able to administer to the child's needs. He cites his role as the child's caregiver during the pendency of these proceedings; his "demonstrated maturity, patience, and a proper concern for the care of the minor child"; and his "stability and continuity, [ ] capacity to co-parent, [ ] ability to communicate with Dianna, and demonstrate[d] respect for the relationship between Dianna and the

minor child." In contrast, he alleges Dianna "presented no evidence that she had abandoned her reckless ways," citing "her associations and drug and alcohol abuse." He further alleges Dianna "actively subverts the child's relationships with Douglas and the child's half-siblings."

We disagree with Douglas's assessment of the record evidence. The trial court found Dianna to be "forthright and candid" in her testimony regarding her prior substance-abuse issues, and the record supports this finding. The record shows she evidenced a concern for the child's well-being above that of her own interests. In contrast, the trial court found Douglas's testimony regarding his concerns for his safety and the child's safety lacked credibility. The trial court found that testimony, along with Douglas's claims regarding Dianna's alcohol and substance abuse and her interactions with substance abusers, was motivated by his interest in the outcome of the custody proceeding.

The record as a whole establishes the parties are equally capable of caring for the child, who would benefit from both parties' involvement as caregivers. Joint physical care is in the child's best interests. Accordingly, we affirm the child-custody decree.

Douglas requests appellate attorney fees. Such an award rests in our discretion and is based on the merits of the appeal, the parties' needs, and their ability to pay. *See In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). Because we did not find his position on appeal to be meritorious, we decline to grant Douglas appellate attorney fees. We assess the costs to Douglas.

**AFFIRMED.**