**In re The MARRIAGE OF Melody J. WHALEN and Charles E. Whalen.**

**Upon the Petition of**

**Melody J. Whalen, Petitioner–Appellee/Cross–Appellant,**

**And Concerning**

**Charles E. Whalen, Respondent–Appellant/Cross–Appellee.**

No. 96–1751.

Court of Appeals of Iowa.

July 30, 1997.

Julie A. Greteman and Gregory J. Siemann of Green and Siemann, Carroll, for appellant.

James R. Van Dyke of Van Dyke & Werden, P.C., Carroll, for appellee.

Heard by SACKETT, P.J., VOGEL, J., and SCHLEGEL,* Senior Judge.

SACKETT, Presiding Judge.

In this appeal from a trial court decision on a modification petition, appellant-cross-appellee Charles Whalen challenges the district court's refusal to modify the custodial

* Senior judge from the Iowa Court of Appeals serving on this court by order of the Iowa Su-

preme Court.

provisions of the dissolution decree to award him physical care. He also objects to the refusal of the trial court to eliminate his alimony obligation to appellee-cross-appellant Melody J. Whalen. Melody's cross-appeal advances the trial court should not have reduced the number of years Charles pays her alimony. She further contends she should have received additional attorney fees in the trial court. She asks for attorney fees on appeal. We affirm on both appeals.

The marriage was dissolved on November 20, 1995, after a contested custody hearing. The physical care of the children, born in May 1982, March 1985, and December 1987, was awarded to Melody. Melody was awarded alimony for four years payable at $400 a month for twelve months, $300 a month for twelve months, and $250 a month for the remaining twenty-four months. Charles was ordered to commence paying alimony December 1, 1995.

On July 23, 1996, Charles filed a petition for modification of custody. Melody had remarried and was moving with the children from Carroll, where the family had always lived, to Estherville, less than one hundred fifty miles to the northeast.

On August 23, 1996, following a hearing, the trial court found Charles had not proved a material change of circumstances and refused to modify physical care. The court modified Charles's alimony obligation so that his alimony payments terminated February 1, 1998. Charles was ordered to pay $500 towards Melody's attorney fees.

Charles first contends he, not Melody, should be the children's physical custodian. He contends he has shown both a substantial change of circumstances and that he can give the children superior care.

■ Charles was made a joint custodian in the dissolution decree. He consequently is benefitted in seeking physical care by the inference he has met the joint custody tests set forth in *In re Marriage of Burham*, 283 N.W.2d 269, 274 (Iowa 1979). *See In re Marriage of Leyda*, 355 N.W.2d 862, 864 (Iowa 1984). However, in seeking a change in physical care, he carries a burden similar to that imposed on a parent seeking a change of custody. *Id.*

■ The question is not which home is better, but whether Charles has demonstrated he can offer the children superior care. *See In re Marriage of Morton*, 244 N.W.2d 819, 821 (Iowa 1976). Charles must show an ability to minister to the children's needs superior to Melody. *See In re Marriage of Ivins*, 308 N.W.2d 75, 78 (Iowa 1981); *Crary v. Curtis*, 199 N.W.2d 319, 320 (Iowa 1972); *In re Marriage of Gravatt*, 371 N.W.2d 836, 840 (Iowa App.1985). If both parents are found to be equally competent to minister to the children, custody should not be changed. *In re Marriage of Smith*, 491 N.W.2d 538, 541 (Iowa App.1992). We review de novo. Iowa R.App. P. 4; *In re Marriage of Feustel*, 467 N.W.2d 261, 263 (Iowa 1991). The burden for a party petitioning for a change in a dissolution is heavy. *See In re Marriage of Downing*, 432 N.W.2d 692, 693 (Iowa App. 1988). Children deserve the security of knowing where they will grow up, and we recognize the trauma and uncertainty these proceedings cause all children. *In re Marriage of Rosenfeld*, 524 N.W.2d 212, 213 (Iowa App.1994). Custody, once fixed, should be disturbed only for the most cogent reasons. *See Downing*, 432 N.W.2d at 693. Charles has the burden to show by the preponderance of evidence that conditions since the dissolution decree was entered have so materially and substantially changed that the children's best interests make it expedient to award custody to Charles. *See In re Marriage of Jerome*, 378 N.W.2d 302, 304 (Iowa App.1985).

Charles contends Melody's remarriage and the accepting of responsibility for four stepchildren, her move from Carroll and the Catholic schools the children had attended, her decision not to inform and involve him in the plans for the move, together with a showing that the home provided for the children in Estherville is not adequate, support a finding of a change of circumstances.

■ We find Melody's decision to make provisions for the move without consulting Charles a violation of the dictates of the joint custody. This decision indicates an intention on her part not to assure their father's con-

tinual involvement in the children's lives. Melody seeks to justify her actions by criticizing Charles. The trial court did not accept her explanation. The trial court cautioned Melody about the need to improve communication with Charles.

■ Charles has been a loving, concerned, and involved parent. He was first told of the move by the children, who went to him telling him they did not want to move. Melody decided to move in June. The children did not tell Charles until August. We consider Melody's failure to communicate to Charles this significant change in the children's lives adverse to her position. Failing to cooperate and communicate with a child's other parent can result in loss of custody. *See In re Marriage of Udelhofen*, 444 N.W.2d 473, 476 (Iowa 1989); *Downing*, 432 N.W.2d at 694; *In re Marriage of Grabill*, 414 N.W.2d 852, 853 (Iowa App.1987).

■ Charles did show changes in circumstances. The question is whether they are substantial enough to justify modification.

Melody was the children's primary caretaker during the marriage. Charles worked outside the home and provided the family with a very comfortable living. He was attentive to his family and their needs.

A substantial portion of the family life revolved around the Catholic church. The three children were baptized in the Catholic church. They attended Catholic schools in Carroll. There is not a Catholic school to attend in Estherville.

Charles has concern that although the parties initially agreed to raise their children in the Catholic faith, Melody has now elected not to follow certain dictates of the Catholic church. He contends the Catholic church is the one stable factor in the children's lives and we should give this consideration.

Melody contends she is Christian and Charles puts too much emphasis on the children's relationship to the Catholic church. He contends it is not so much the Catholic church as the fact the religion to which the children have subscribed is the one stable factor in their lives.

Melody and Charles were members of the Catholic faith during the marriage. Together they elected to baptize the children in this faith. They actively participated as did their children in church activities. They jointly elected to enroll the children in Carroll Catholic schools. The dissolution court found the children were raised Catholic and believed the evidence introduced at the dissolution trial supported the fact they would remain Catholic. Melody no longer attends the Catholic church and takes the children with her to a Lutheran church.

Religious freedoms guarantee that one, according to his or her own conscience, has the right to worship in the religion of his or her choice, or not to worship. While the issue may seem to be how one worships God, the issue is what weight, if any, is given in a modification of custody action to a joint custodian's decision to change, without the input of the other joint custodian, the structure in a child's life previously agreed to by both parents. Melody had a responsibility as a joint custodian to consult with Charles prior to disregarding the dictates of the religion she and Charles originally chose for the children. Her failure to do so weighs against her position.

The children all told the trial court they wanted to stay in Carroll. The children faced the school year adjusting to a new school, new home, four new step-siblings ages ten, nine, six, and five, a new stepfather, Richard, and a new church. Additionally, they were physically distanced from their father. Richard's children had suffered the trauma of a dissolution and custody battle two years earlier.

Structure and consistency are important to children. These children have lost consistency in their lives. The fact Melody decided without Charles's input to take the children to another environment weighs against her petition.

Charles expresses further concern about the children being moved in a home with four step-siblings where these children will be living in basement quarters of a small house and Melody taking on the numerous problems connected with two families of children.

Additionally, she will be commuting twenty miles to attend beauty school.

The trial court, while voicing concern about the living quarters the children would have in Estherville, determined the quarters would be temporary and rectified by a planned enlargement of the home.

■ Where there is good reason for moving children in our highly mobile society, a change in the custodial parent's geographic location is not justification in itself for change of custody. *In re Marriage of Weidner*, 338 N.W.2d 351, 360–61 (Iowa 1983); *In re Marriage of Frederici*, 338 N.W.2d 156, 159 (Iowa 1983); *In re Marriage of Behn*, 416 N.W.2d 100, 102 (Iowa App.1987); *Jerome*, 378 N.W.2d at 305. While stability is important in a child's life, stability can be nurtured as much by leaving children with the same custodial parent as leaving them in the same neighborhood. *Jerome*, 378 N.W.2d at 306. A move in and of itself does not justify changing physical care. *See Frederici*, 338 N.W.2d at 159.[1]

Charles remains in an adequate home in the area where the children grew up. The institutions they are familiar with are near. Charles has had substantial involvement with the children. Currently in Charles's home the children are not faced with the problems of adjusting to step-siblings and a stepfather, and they have their own space.

The issue of whether Charles has met the heavy burden for modification is close. We give weight to the fact findings of the trial court, particularly as to credibility of witnesses, and affirm. *See Weidner*, 338 N.W.2d at 356.

■ Melody contends the trial court should not have modified alimony. She contends the trial court should not have allowed Charles to modify his petition to ask to terminate alimony at the end of trial. Though not specified in the petition, the issue of alimony was raised in Charles's trial brief.

The matter was quickly brought to the court's attention and the judge agreed to consider the alimony issue. The question is whether the trial court abused its discretion in allowing the amendment.

Melody objected to the amendment only because it was not timely. The trial court indicated he might rule on the alimony issue and asked counsel if there were anything further. Melody did not ask for time to refute the issue and did not offer any evidence.

We review for an abuse of discretion. *In re Marriage of Titterington*, 488 N.W.2d 176, 180 (Iowa App.1992). The trial court did not abuse its discretion in allowing the amendment.

We have considered Charles's challenge to the trial court not totally terminating the alimony. The trial court found Melody on the way to financial stability and in considering this, along with her remarriage, decreased the term of her alimony. Charles contends the alimony should immediately terminate. Melody contends the alimony should remain as in the original decree.

■ The general rule in Iowa is that while the subsequent remarriage of a spouse does not result in automatic termination of an alimony obligation, it shifts the burden to the recipient to show that extraordinary circumstances exist which require the continuation of the alimony payments. *In re Marriage of Shima*, 360 N.W.2d 827, 828 (Iowa 1985). When a provision for alimony is silent on the issue of payment of alimony to a former spouse after his or her remarriage, the burden is on the former spouse contending the alimony should continue to show extraordinary circumstances warrant continuing the alimony. *Id.; In re Marriage of Cooper*, 451 N.W.2d 507, 509 (Iowa App. 1989).

■ Melody has failed to show extraordinary circumstances exist which require ex-

---

1. These cited cases were decided prior to the amendment to Iowa Code section 598.21 providing:

    8A. If a parent awarded joint legal custody and physical care or sole legal custody is relocating the residence of the minor child to a location which is one hundred fifty miles or more from the residence of the minor child at the time that custody was awarded, the court may consider the relocation a substantial change in circumstances....
    H.F. 612, p. 117.

tending her alimony beyond the period provided for by the trial court. *See In re Marriage of Von Glan*, 525 N.W.2d 427, 431 (Iowa App.1994). The result reached by the trial court is equitable. We affirm on this issue.

Melody contends the trial court did not award her sufficient attorney fees. We review for an abuse of discretion. *See In re Marriage of Dahl*, 418 N.W.2d 358, 361 (Iowa App.1987).

Attorney fees are not recoverable as a matter of right but rest within the trial court's discretion and depend upon one spouse's financial needs and the other spouse's ability to satisfy them. *In re Marriage of Orgren*, 375 N.W.2d 710, 714 (Iowa App.1985); *In re Marriage of Estlund*, 344 N.W.2d 276, 281 (Iowa App.1983). Any

award of attorney fees depends on the financial circumstances and earnings of each party. *Burham*, 283 N.W.2d at 278. Considerable discretion is assigned to the trial court in the allowance of attorney fees. *Locke v. Locke*, 263 N.W.2d 694, 696 (Iowa 1978). We affirm the trial court on this issue.

Melody requests attorney fees on appeal. The parties shall pay their own attorney fees. Costs on appeal are charged to Charles.

**AFFIRMED.**