**IN THE COURT OF APPEALS OF IOWA**

No. 15-1484
Filed August 17, 2016


IN RE THE MARRIAGE OF MARCUS EUGENE RUSSELL
AND ANGEL MARIE RUSSELL

Upon the Petition of
MARCUS EUGENE RUSSELL,
        Petitioner-Appellant,

And Concerning
ANGEL MARIE RUSSELL,
        Respondent-Appellee.
_____


        Appeal from the Iowa District Court for Clinton County, Paul L. Macek,

Judge.


        Marcus Russell appeals the district court's denial of his petition to modify

the physical-care provisions of the decree dissolving his marriage.  **REVERSED**

**AND REMANDED.**


        Breanne M. Schadt of H.J. Dane Law Office, Davenport, for appellant.

        Micki M. Mayes of Micki M. Mayes Law Firm, Davenport, for appellee.


        Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

Marcus Russell appeals the district court's denial of his petition to modify the physical-care provisions of the decree dissolving his marriage to Angel Russell, now known as Angel Fox. Marc contends the court erred in (1) finding he had not shown a substantial change in circumstances warranting a modification of the care provisions, (2) determining a change in physical care was not in the children's best interests, and (3) concluding Marc had not established himself as the superior parent. For the reasons stated below, we reverse and remand the decision of the district court denying Marc's application for modification.

### I.  Background Facts and Proceedings

Marc and Angel divorced in 2010. The dissolution decree provided for joint legal custody of their three children: E.R., born in 2002, T.R., born in 2003, and S.R., born in 2005. The decree also awarded physical care of the children to Angel with every-other-weekend visitation to Marc. Marc appealed the decision, which was transferred to our court. We affirmed but modified the decree to provide Marc with a midweek visit in addition to visitation every other weekend. *In re Marriage of Russell*, No. 10-1361, 2011 WL 944372, at *4 (Iowa Ct. App. Mar. 21, 2011).

Marc lives in Camanche with his fiancée, April, and their young child. He owns a large house that allows for each child to have his or her own bedroom. He works as a supervisor and has been employed with the same company since 2002. At the time of trial, Marc earned approximately $1229 gross per week.

Angel lives in Muscatine with the parties' children, as well as her boyfriend, Jake, and their two young children. She has held some seasonal and part-time jobs over the years but has generally been a stay-at-home mother throughout the parties' marriage, dissolution proceedings, and since entry of the decree in 2010. Prior to the decree, Angel moved several times, enrolling the children in three different schools. Angel relocated again shortly after entry of the decree, transferring the children back to the school they had attended the previous year. In 2014, Angel, Jake, and the children moved to a larger home Jake had purchased in Muscatine, and Angel again switched the children's schools. Although the home is large, E.R. and T.R.'s bedrooms are in the basement and are not fully finished.

In April 2015, Marc filed a petition to modify the decree, seeking physical care of the parties' three minor children. He alleged there had been a material and substantial change in circumstances because Angel had exposed their children to drugs, alcohol, and domestic violence; had attempted to interfere with Marc's relationship with the children by making derogatory and defamatory statements about Marc and his fiancée to the children and in their presence; had interfered with Marc's communication with the children; had failed to properly supervise the children; and had unilaterally changed the children's school without advance notice to Marc. Marc also alleged the children had expressed a desire to live with him.

Marc testified at the August 2015 trial that he had discovered on social media one of the parties' children, who was then thirteen, had started using illegal drugs. Marc stated he had confronted the child about the social media

posts and the child had admitted to Marc the child had used marijuana at Angel's house five times, with Angel's then-sixteen-year-old child, who is a half-sibling to the parties' children.[1]  Marc testified he contacted Angel about their child's drug use and Angel was already aware the child had used marijuana at her home but had neglected to inform Marc.  Angel admitted she did not speak to Marc about the child's posts on social media or his use of marijuana.

Marc also alleged Angel had exposed their children to alcohol.  Angel testified at trial she consumes three to six beers a day during the week and around six beers or more a day on the weekends.  Her boyfriend, Jake, testified she typically consumes one or two beers every day before noon.  Angel testified she does not drink to the point of intoxication and her alcohol and tobacco habits do not interfere with her parental responsibilities.  At trial, Angel admitted she has told the children, aged thirteen, eleven, and nine at the time of trial, that it is fine for them to drink alcohol underage so long as they are at her home.  In November 2014, Angel was arrested for contributing to the delinquency of a minor and interference with official acts in relation to an incident involving alcohol and her oldest child.  The child had invited four other minors over to Angel and Jake's home where the minors all consumed alcohol and became intoxicated to the point that her son assaulted one of his friends at the home.  Angel testified she had taken the youths' keys to prevent them from driving home, but she did not know they were drinking alcohol.  Angel later pled guilty to the offenses and received a deferred judgment.

---

[1] Angel's oldest child, C.R., is from a relationship prior to her marriage to Marc.  C.R. is in the custody of his father.

Marc further alleged Angel had exposed their children to domestic violence between herself and Jake.[2]  At trial, Angel testified she had contacted the police because of Jake's actions on two separate occasions,[3] one of which involved Jake throwing the family's television on the floor after a physical, tug-of-war struggle with Angel over the power cord.  The children were present on that occasion, and Angel, believing the situation had become "hostile enough," had sent them to a back bedroom.  Angel also admitted she kept a sleeping bag and pillow in the back of her vehicle and slept there occasionally when things got "heated" with Jake.  Angel characterized Jake as having "little" anger issues and acknowledged Jake had some sort of record but stated she did not know what was on his record.  Angel described another incident in which Jake became angry and ran his vehicle into several mailboxes and repeatedly hit the vehicle's windshield with his hand until the windshield cracked.[4]  Angel also admitted she kept a notebook in which she wrote down "certain incidents" that occurred between herself and Jake and how she felt about the incidents.  Angel testified

---

[2] Angel has maintained Marc also has a history of domestic abuse.  The original decree noted Marc had admitted to domestic violence in the home between himself and Angel, and the parties had entered into a "protective order by consent."  *See also Russell*, 2011 WL 944372, at *1 (discussing history of protective orders Angel obtained against Marc). The court also pointed to witness testimony and Marc's demeanor and body language and found there was a history of domestic violence in the marriage.  *Id.*  There have been no new allegations of domestic violence between Marc and Angel since the decree in 2010, and there have been no allegations of domestic violence between Marc and his fiancée, April.

[3] The record indicates a third incident, which occurred prior to entry of the decree, where Angel contacted the police regarding Jake's violent actions.  In December 2009, Angel contacted law enforcement because Jake assaulted Marc in the presence of the children, when Marc arrived at Angel and Jake's home to collect the children for a visit.

[4] It is unclear whether the children were present for this incident.  Marc testified the children were present and later told him of the incident.  Angel testified the children were with Marc during the incident, and that she told her oldest child about it, who then relayed the incident to the younger siblings.

she could not recall whether she had written down anything about physical violence between herself and Jake. Angel further testified she did not want her children to behave like Jake.

Marc further claimed there is a lack of supervision at Angel's house. Marc testified at trial he contacted the Iowa Department of Human Services (DHS) regarding the alleged lack of supervision on two separate occasions because T.R., who was eight at the time, had been shot in the face with a BB gun while in Angel's care. Angel admitted she did not reach out to Marc when either incident occurred.

At trial, Marc presented evidence the children had often been behind in their schoolwork and their grades had declined over the years since the decree was entered. Marc testified the children had difficulty completing homework assignments when in Angel's care. Marc testified when the children were behind, their teachers would email Marc and send unfinished work home on the days scheduled for the children to be in Marc's care because Marc would help the children get caught up. When questioned about the children not completing their homework while in her care, Angel testified the children would lie to her about whether they had homework or how much homework they had. She also stated she would take action when the schools would send reports home if the children had not completed their homework. Angel acknowledged the children's grades had declined since switching to a new school in 2014. Additionally, Marc presented evidence the school contacted Marc on several occasions over the years regarding the children's behavior and because the children had overdue lunch accounts.

In August 2014, Angel and Jake moved the children to Muscatine, and Angel enrolled the children in school there. Angel testified at trial she informed Marc of the planned move in advance but had not discussed the change in schools with Marc because she had not yet decided which school the children would attend. Due to Angel's late decision in selecting a school district for the children, she did not enroll the children until the day before school started. She informed Marc the children would be attending a new school on the children's first day. Consequently, the children were unable to participate in fall sports even though Marc had registered their two oldest children for football and paid the fees for that season at the children's old school. At the time of trial on August 11–12, 2015, Angel had not yet registered the children for the 2015–2016 school year.

Marc further presented evidence he had otherwise been actively involved with the children's schools, including attending conferences, music concerts, field trips, and other extracurricular activities. Angel testified she did not attend all of the children's school conferences because Marc would be there,[5] however, both parties also testified Angel could schedule conferences with the school for a separate time from Marc. Angel also admitted she did not attend any of the children's field trips or any football practices or games that the two oldest children participated in since entry of the decree.

Additionally, Marc alleged Angel had attempted to interfere with his relationship and communication with their children. At trial, Marc testified Angel

---

[5] It is obvious the parties' relationship is strained. Both parties testified regarding an incident that occurred at the children's school in which Angel filled in Jake's name on a classroom form instead of Marc's, which upset Marc, and he reacted poorly in front of the teacher and other families.

makes derogatory comments about him and his fiancée in front of and to the children. Marc presented evidence of negative posts Angel had made on a social media account about Marc. He testified Angel is "friends" on Facebook with the parties' oldest child and the child can see the posts that Angel makes about Marc.[6] Marc also testified Angel has taken the children's cell phones away from them so that they cannot speak with Marc, and Angel admitted she requires the children to speak with Marc on speakerphone while she and Jake are present. Angel recognized it was not appropriate to relay messages to Marc through the children but did so anyway because she did not feel she could speak to Marc. She also testified she had rarely notified Marc of the children's illnesses or doctors' appointments in the preceding five years and had not told him about any appointments within the year leading up to the trial. At the time of the modification trial, Marc had completed Children in the Middle, but Angel had not.

Finally, Angel and her supporting witnesses testified the parties' two oldest children had expressed a desire to live with her and Jake, while Marc and his supporting witnesses testified the two oldest children wanted to live with him. Marc also presented text messages the oldest child had sent to Marc stating the child wanted to live with him. However, neither party presented any evidence regarding the wishes of the youngest child, although all agreed the three children should stay together.

---

[6] One such post was particularly hateful, wishing bad karma on Marc, and then later reporting "karma didn't waste any time" because Marc's grandmother had died later that day.

The district court made the following credibility findings:

> Angel impressed the court with her testimony. She does not have a high school diploma. Nonetheless, she was well spoken and articulate. She was candid and straightforward. She did not minimize her circumstances or her faults. She is simply doing the best that she can for herself and her children given the hand she has been dealt. Marcus was not quite as credible.

In its analysis, the court recognized this was a difficult case and noted modifying physical care would be a monumental change for the children. The court ultimately denied Marc's application for modification finding Marc had failed to meet his burden to show there had been a substantial change in circumstances or that he could provide superior care for the children. Marc has appealed.[7]

## II.      Scope and Standard of Review

The action to modify a dissolution decree is heard in equity; therefore, our review is de novo. *See* Iowa R. App. P. 6.907; *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014). We give weight to the factual findings of the district court but are not bound by them. *See* Iowa R. App. P. 6.904(3)(g); *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). Case precedent has little value, and we must base our decision on the particular circumstances of the case before us. *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002). Our overarching consideration is the best interests of the children. *See In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015).

---

[7] Angel filed a motion to dismiss Marc's appeal. The supreme court denied Angel's motion and both parties' requests for an award of attorney fees.

### III.     Analysis

Courts may modify the custody or care provisions of a decree only when the record reveals "there has been a substantial change in circumstances since the time of the decree, not contemplated by the court when the decree was entered, which was more or less permanent, and relates to the welfare of the child." *Melchiori*, 644 N.W.2d at 368. The burden is on the party seeking modification to show a substantial change by a preponderance of the evidence. *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016). In addition, the party seeking modification must also demonstrate "a superior ability to minister to the needs of the children." *Id.* Once a custodial arrangement is established, "it should be disturbed only for the most cogent reasons." *Id.* (quoting *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983)).

In its ruling, the court found that although Angel consumed alcohol daily, she did not drink to the point of intoxication, her alcohol consumption did not fuel rages, and she did not physically or verbally abuse the children while drinking. The court also concluded that although Angel and Jake had a "roiling relationship," there was no evidence of domestic abuse. The court recognized the parties do not communicate well and believed Angel was intimidated by Marc. It noted Marc was active in the children's lives, which had a positive effect on the children. The court found two of the children were performing reasonably well in school but that one was struggling. The court also noted the three children were bonded to Angel's two children with Jake. The court relied heavily on the fact that the children had been in Angel's care for the preceding five years

and concluded the situation existed much the same as it did at the time of the decree, and therefore no substantial change in circumstances had occurred.

Although we give deference to the district court's credibility findings—and its ruling clearly showed the court found Angel to be a more pleasant person than Marc—on our de novo review of the record, we have focused on the facts that are not in dispute and do not depend on credibility or likeability. Angel admitted she spends considerable time in her garage, smoking and drinking. She has a casual approach to parenting, expecting the children to self-report school issues and misbehaviors. We recognize that teenagers of many families find opportunities to find trouble or mischief. But, Angel is a stay-at-home mother who spends much of her time in her garage while her children fail to complete homework, get shot in the face with a BB gun, drink alcohol, and smoke cigarettes and marijuana at her home. She blames Marc for her not attending school functions. Her live-in boyfriend, Jake, exposes the children to his violent tendencies. The evidence does not show he has physically assaulted Angel or the children, but is replete with acts of violence and emotional outbursts, if not abuse. She sometimes sleeps in one of the children's rooms or in her vehicle to avoid him at those times. To suggest this is not unhealthy for the children is a surprise to us. The district court found she is doing the best she can given the hand she has been dealt. Her decisions to drink alcohol throughout the entirety of every day, to live with and expose her children to a violent person, and to spend significant time in the garage away from direct supervision of the children are decisions that are not beyond her control, but are decisions she has made.

We recognize and do not disagree that Marc has deficiencies as well. But the evidence shows he provides supervision and is hands-on with the children. Angel and the district court seem suspicious that his active involvement in monitoring school performance, attending almost all school field trips, and active support of extracurricular activities are all for the purpose of building a case for obtaining custody from Angel. We cannot rule out that possibility, but note this behavior has been constant for the last five years. Obviously, the children have benefitted from it. There is no evidence to suggest he will not continue such active supervision and involvement with the children.

In summary, we conclude Angel's arrest, alcohol abuse, failure to supervise the children, failure to attend the children's school events, failure to timely register the children for school, failure to ensure the children completed their homework, and the children's overall decline in grades while in Angel's care, collectively prove a substantial change in circumstances warranting modification of physical care.

Having found a substantial change in circumstances, we must next determine whether Marc has met his burden to show he can offer superior care. *See In re Marriage of Whalen*, 569 N.W.2d 626, 628 (Iowa Ct. App. 1997). Marc "must show an ability to minister to the children's needs superior" to Angel's ability. *Id.* "If both parents are found to be equally competent to minister to the children, custody should not be changed." *Id.*

Marc has been consistently employed, and his current position allows him to be available to parent his children after school while his fiancée is available to help the children get ready in the mornings. Marc testified the children will attend

a school that is within the same conference as the children's old school and the children will be able to see their friends at extracurricular activities. Marc has always provided financially for the children and has a good relationship with them. Marc presented evidence the children are very active during visits with him and the children enjoy participating in sports and outdoor activities and often spend time with Marc's extended family. When the parties' two older children were involved in football, Marc drove over an hour each way almost daily to attend nearly every practice and only missed one game because both children had a game scheduled at the same time. In contrast, Angel admitted she had been to very few school events for the children.

Furthermore, if a parent seeks to establish a home with another adult, that adult's background and relationship with the children is a significant factor in a custody dispute. *In re Marriage of Malloy*, 687 N.W.2d 110, 113 (Iowa Ct. App. 2004). On at least two occasions, Angel contacted law enforcement because of Jake's actions. Jake refused to take responsibility for his violent actions, testifying he had only "reached out and tapped" the windshield or that he "laid down" the television. When questioned whether he had bragged to the parties' children about the assaults he had committed and the fighting he had participated in, Jake responded that even professional fighters brag to their children about their victories. Jake also admitted he had threatened Marc in front of the children. Angel testified she kept a sleeping bag and pillow in the back of her vehicle and she slept there occasionally because things got "heated" with Jake and she also had a notebook in which she wrote down "certain incidents" that occurred between herself and Jake. Moreover, Angel recognized Jake's

violent behavior when she testified she did not want her children to act like Jake. We find there is evidence of some domestic violence between Jake and Angel, and the children have been present on some occasions to witness it.

We are also concerned about the effect Angel's alcohol use has on the children. Angel testified she consumes three to six beers per day during the week and more on the weekends. Jake testified Angel drinks one or two beers before noon while caring for the children. Angel testified her alcohol consumption has no effect on the children; yet, we cannot ignore the fact that Angel was arrested for contributing to the delinquency of a minor and interfering with official acts because of an alcoholic party her sixteen-year-old child hosted at her home while she, Jake, and the younger children were present, which led to her son assaulting another minor child. We are also troubled by Angel's testimony that she has told the children at issue—who were age thirteen and younger—they are allowed to consume alcohol underage so long as they are at her home.

For the above reasons, we conclude Marc has proved he can give the children superior care. We are mindful that changing school districts can have a detrimental effect on the children but find modifying physical care to Marc is in the children's best interests.

Additionally, Marc presented evidence the parties' oldest child wished to live with Marc. A child's preference is a relevant but non-conclusive factor in physical-care determinations. *In re Marriage of Ellerbroek*, 377 N.W.2d 257, 258 (Iowa Ct. App. 1985); *see also* Iowa Code § 598.41(3)(f) (2015) (permitting consideration of a child's wishes regarding a physical-care arrangement after

taking into account the child's age and maturity). At the time of the modification trial, E.R. was thirteen years old. We find E.R. was of sufficient age and maturity level that we give weight to his desire to live with Marc.

### IV. Conclusion

Based upon our de novo review of the record, we conclude Marc has proved by a preponderance of the evidence a substantial change in circumstances has occurred since entry of the decree warranting modification of physical care. We further find Marc has a superior ability to minister to the children's needs and that a change in physical care is in the children's best interests. We deny Angel's request for attorney fees and assess court costs to her. We reverse and remand to the district court for further orders consistent with this opinion.

**REVERSED AND REMANDED.**