# IN THE COURT OF APPEALS OF IOWA

No. 16-0120
Filed March 8, 2017

**CHAD MICHAEL CARLSEN,**
Plaintiff-Appellant,

**vs.**

**RACHAEL RENEE NOBLE,**
Defendant-Appellee.

_____

Appeal from the Iowa District Court for Monona County, Jeffrey A. Neary, Judge.

A father appeals a district court decision that modified a paternity decree to place physical care of the parties' children with the mother. **AFFIRMED.**

William H. Larson of Klass Law Firm, L.L.P., Sioux City, for appellant.

Steven C. Kohl of Nymann & Kohl, Sioux City, for appellee.

Considered by Potterfield, P.J., Doyle, J., and Goodhue, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**GOODHUE, Senior Judge.**

Chad Michael Carlsen appeals from the decree of modification transferring physical care of the parties' three minor children from Carlsen to the children's mother, Rachael Renee Noble.

## I.      Factual Background

Carlsen and Noble were never married but lived together from February 2004 until October 2009.  Three children were born as the result of the relationship.  They are M.C., a boy, born in 2004, and twin girls, C.C. and C.C., born in 2005.  Noble moved out of the family home, and after two weeks, she returned the three children and left them with Carlsen.  In addition, Noble left her older daughter, M.N., a child from a previous relationship, with Carlsen.

Noble felt Carlsen might become violent and, to memorialize the separation and custody arrangement, filed a request for a no-contact order.  Carlsen consented to the no-contact order, and no evidence of physical abuse was presented.  The no-contact order confirmed the custodial relationship adopted by the parties and granted Noble visitation rights.

Later, Carlsen filed a formal petition requesting custody and support for the children.  A trial was held on November 8, 2011, and on January 17, 2012, a formal order was entered granting physical care of the parties' minor children to Carlsen, granting visitation rights to Noble, and providing for support.  Noble appeared and participated in the trial but did not have counsel.

At the time of the November trial, Carlsen was living with Karen Bartelson, a divorcee who had custody of four children born to her during a prior marriage. Bartelson was a fourth-grade teacher at the time and testified on Carlsen's behalf

at the trial. The court gave weight to her testimony and noted she had testified that Carlsen was "a caring parent . . . patient, mindful, and respectful" and ministered to the children's physical needs. The court also noted "the children were doing very well and their report cards and progress reports seemed to indicate that they have adjusted well to the current living situation." It was noted that "Ms. Bartelson is a positive influence on Chad and the children."

At the time of the November 2011 trial, Noble was living with Ryan Shepard in a town nearby to Carlsen, and had given birth to two more children as the result of the new relationship. One son had been born in 2010 and the second in 2011. Noble had not exercised all the visitation set out in the no-contact order, and the court stated, "Rachael has not stepped up to the plate as a parent relative to her visitations, school, medical or any of the other major factors that a court might look to to pick an appropriate custodian." Noble expressed an interest in moving to Idaho, which was interpreted by the court to be her intent, and visitation was designed to accommodate her move.

On August 26, 2013, Noble filed an application to modify the physical care provision of the paternity decree. Since the November 2011 trial, Bartelson and Carlsen separated. Bartelson was found to have possession of marijuana and methamphetamine and was prosecuted accordingly. Her children are no longer living with her. She has resigned her teaching position. She testified at the current trial that she and Carlsen had smoked pot together, that Carlsen had become short tempered, and that she thought he was an alcoholic.

When Carlsen and Bartelson separated, the children were with Noble for two or three weeks. Then Carlsen moved the children to South Sioux City,

Nebraska, and then to Coon Rapids, Minnesota. He made efforts to have his mother appointed guardian before the move to Minnesota, and they lived with her while in Minnesota. It appears Carlsen did not always live with the children when they were residing in Minnesota. Noble's visitation with the children was arranged by Carlsen's mother during that period.

In October 2013, Carlsen and the children moved to the state of Washington for the purpose of Carlsen obtaining a better job. Carlsen is presently unemployed. When he first went to Washington, he was making sixteen dollars per hour as a welder but has voluntarily quit his employment. He is presently living with Nancy Rosenbaum and her three children, ages six, nine, and thirteen. The Carlsen children have no extended family presently living in the vicinity of Monroe, Washington, where they were residing at the time of trial. Rosenbaum is employed full time at Boeing but works irregular hours. Carlsen provides child care for the children when Rosenbaum is at work.

Carlsen was arrested and convicted of operating while intoxicated, third offense, while in Iowa. His driver's license was suspended, he was ordered to receive treatment for alcohol addiction, and he was otherwise placed on probation and assessed financial obligations. He has not complied with his probation requirements, and an application for a revocation of his probation was filed. His probation has been revoked, and a warrant for his arrest has been issued. Carlsen did not appear in person for the modification trial but appeared by Skype. In obtaining the court's permission to use Skype, Carlsen did not initially mention the warrant.

Noble has full-time employment and continues to live in Danbury, Illinois, with her boyfriend, Shepard, and they have a third child. Shepard is on social security disability and is a stay-at-home parent. Noble has substantial extended-family support in the vicinity where she resides.

We have not been provided appreciable information about the well-being of the children, their advancement in academics, their interest in extracurricular activities, or how well they have adjusted to the new living situation or frequent moves. There was considerable evidence about Noble's visitation attempts and telephone calls, or lack thereof. The parties did not cooperate well in arranging visitation, but recently, Carlsen's arrest warrant and the distance involved has made visitation difficult. At the time of trial, both parties appeared to have adequate physical facilities to care for the children. The trial court questioned Carlsen's credibility and, based on Carlsen's disregard of the sentencing court's order, questioned whether Carlsen would follow a court order regarding visitation or otherwise.

After a modification hearing on November 5, 2015, the court entered a ruling on December 30, 2015. The court concluded the changes were material and substantial and Noble would be the better parent. The court modified the paternity decree to place physical care of the children with Noble. The court gave Carlsen visitation rights and ordered him to pay child support.

Carlsen appeals, claiming the changes in circumstances were not material or substantial enough to warrant a change in physical care and, further, Noble failed to prove she could provide superior care.

## II. Issue Preservation

Error preservation is generally considered present when the issues to be reviewed have been raised and ruled on by the district court. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). The issue of physical care of the minor children of the parties was raised by the petition to the court, considered by the court, and ruled on by the court.

## III. Scope of Review

Our review is de novo. *See* Iowa R. App. P. 6.907. Especially when considering the credibility of witnesses, we are to give weight to the findings of fact of the district court, but are not bound by them. Iowa R. App. P. 6.904(3)(g).

## IV. Discussion

A change in the physical care of minor children, as established by a previous order or decree, requires proof of a material and substantial change of circumstances and that it is in the best interest of the children to make the change requested. *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). The burden of a party requesting a change in physical care is heavy. *In re Marriage of Whalen*, 569 N.W.2d 626, 628 (Iowa Ct. App. 1997). It is Noble's burden to establish she can offer superior care to Carlsen. *See id.* Once custody is determined, it should not be changed except for the most cogent reasons. *Id.* Children deserve the security of knowing where they will grow up. *Id.* Custody of children of unmarried parents is determined by the same rules as if the parents had been married. *Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988).

Noble clearly established a material and substantial change of circumstances. The district court set out the changes in detail. Since the original degree was entered, Noble has demonstrated a degree of stability. She is still living with Shepard and she has apparently been gainfully employed. Shepard appears to be capable of caring for the children when she is absent. Carlsen has a drinking problem, which does not appear to have been present or recognized at the November 2011 trial. He has apparently smoked marijuana at a time when he was caring for the children. He has moved numerous times since custody was initially determined. He has had periods of unemployment because of choice or otherwise. He has made an effort to have his mother appointed guardian of the children and, apparently, did not live with them for a period of time. Carlsen and Bartelson have separated, and he has blended his family with Rosenbaum and her family.

Carlsen's actions since the decree was entered have demonstrated a great deal of instability. The district court felt, and we agree, it is significant that there is a felony warrant outstanding against Carlsen in Iowa, making a return to Iowa to facilitate the children's visitation with Noble and her extended family highly unlikely. Further, the possibility of a prison sentence for Carlsen is clearly present.

Unfortunately, the district court did not have information as to how or whether the children have progressed since the original paternity order was entered, nor do we. What is in the best interest of the children is the first and governing consideration in determining physical care of children. Iowa R. App. P. 6.904(3)(o). Custody determinations are factually driven in each case and turn

almost exclusively on the facts of the case. *Stevenson v. McMillan*, 95 N.W.2d 719, 721 (Iowa 1959). Since the initial paternity order was entered in 2012, we can assume the children have lived in four different homes. Those who were of school age have attended four different schools. The children have been introduced to two different step-mothers and were directly or indirectly exposed to marijuana, methamphetamine, excessive use of alcohol, and the examples those present. In addition, the children have had to bear disputes between the natural parents concerning visitation, their availability for telephone calls, and the frequency of those calls. We are left to assume how the children have been affected and that it cannot be good.

The trial court made detailed findings of fact and discussed how the facts applied to the applicable law. We see no basis to overrule the findings of fact or the conclusions drawn.

## V. Attorney Fees

Noble requests attorney fees for this appeal. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). We consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal. *Id.* We deny the request for appellate attorney fees.

We affirm the decision of the district court.

**AFFIRMED.**