# IN THE COURT OF APPEALS OF IOWA

No. 19-0253
Filed November 27, 2019

IN RE THE MARRIAGE OF DEREK DAVID MICHAEL GOBLE
AND DANIELLE FENTON GOBLE

Upon the Petition of
DEREK DAVID MICHAEL GOBLE,
    Petitioner-Appellant,

And Concerning
DANIELLE FENTON GOBLE n/k/a DANIELLE DARCY FENTON,
    Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Des Moines County, John M. Wright,

Judge.


        Derek Goble appeals from the court's ruling denying his petition to modify

physical care and support. **REVERSED AND REMANDED.**



        Jennifer E. Klever-Kirkman of Robberts & Kirkman, L.L.L.P., Burlington, for

appellant.

        Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellee.


        Considered by Bower, C.J., and Vaitheswaran and Doyle, JJ.

**BOWER, Chief Judge.**

Derek Goble appeals from the district court's ruling denying his petition for modification seeking physical care of his child. On our de novo review, we conclude Derek has established a substantial change of circumstances, which warrants the modification of the physical care provisions of the decree dissolving his marriage to Danielle Goble, now known as Danielle Fenton. We therefore reverse and remand for entry of a modified decree.

**I. Background Facts and Proceedings.**

Derek and Danielle are the parents of D.G., born in 2008. D.G. was born with a congenital lung defect and had part of a lung removed as an infant. D.G. is subject to lung illnesses but is otherwise healthy and active. In November 2010, a dissolution decree was entered approving the parties' stipulation that D.G. be placed in the parents' joint legal custody and in Danielle's physical care. Derek had parenting time every other day after school until 8:15 p.m. and alternate weekends from Friday to Sunday at 6:00 p.m.

At the time of the divorce, Derek was employed at Frank Millard Company as a sheet metal worker. Danielle was a licensed practical nurse and was working at a care center. D.G. continues to attend the school system stipulated in the dissolution decree.

Over the ensuing years, the parents were flexible in allowing changes to each other's parenting time. As D.G. grew older, the parties agreed the midweek visits would be overnight stays.

From August 2016 to late February 2017, Danielle left the child in Derek's care full-time. She saw the child occasionally during this period. For several months, Derek did not know where Danielle was.[1]

Danielle was charged with ongoing criminal conduct, first-degree theft, and forgery for events occurring in December 2016 through January 2017. (In October 2018, she pleaded guilty to third-degree theft, an aggravated misdemeanor; the court suspended her two-year prison sentence and placed her on unsupervised probation for two years. The other charges were dismissed.)

In March 2017, Danielle moved in with her sister, and D.G. resumed living with Danielle but spent the "majority of overnights" with Derek. Danielle worked from 11:00 p.m. to 6:00 a.m.

On February 1, 2018, Derek filed a petition to modify the physical care and support provisions of the dissolution decree, asserting Danielle had left D.G. in his sole care for a number of months without seeing D.G., had pending criminal charges, lacked stable residence and employment, was involved in a department of human services (DHS) child-abuse assessment due to reports she was using drugs and exposing D.G. to drugs, and that Derek could provide superior care. Derek asked the court to grant him physical care or, in the alternative, shared physical care.

In February 2018, while D.G. was in Danielle's care, Danielle got into a physical altercation with her boyfriend's former girlfriend and Danielle was pepper

---

[1] When asked why he did not seek a modification of the dissolution decree at this time, Derek testified: "I didn't need to. If I had her all the time, why did I need to change anything? I already had her."

sprayed in the face. Danielle yelled she would kill or beat the woman. Danielle was arrested and charged with harassment. This charge was dismissed when the complainant moved to Illinois.

On Saturday July 21, Danielle was arrested for carrying a weapon, possession of Alprazolam pills,[2] and possession of crack cocaine. Her boyfriend was in the car with her. This arrest occurred during Danielle's parenting weekend with D.G. However, D.G. was at Danielle's home with Danielle's six-year-old son and no adult supervision. Danielle contacted her mother, who—with Danielle's sister—went to Danielle's home to take care of the children while Danielle went to jail. Following this July 2018 arrest, Danielle told her sister she wanted to kill herself. She was involuntarily committed that evening and released on Monday morning. A child-abuse assessment followed these events.

Danielle tested positive for marijuana in July and again in September 2018.

On November 2, Danielle was arrested again in Henderson County, Illinois, on her way back to Iowa from Chicago. She was arrested for speeding, but was also charged with possession of cocaine and a prescription drug. The arrest occurred in the early morning hours on a day Danielle should have had D.G. in her care, but D.G. was staying with Danielle's sister. Danielle's car was seized with D.G.'s school bag inside. D.G. did not go to school the next day because she did not have her school bag. Law enforcement would not release the bag to Derek.

---

[2] Alprazolam is the generic form of Xanax. Danielle admitted there were several four-milligram Xanax pills. She had an expired prescription for one-milligram Xanax pills.

The modification trial was held on December 5 and 6.[3]  At that time, Derek was thirty-four years old, Danielle was thirty-two, and D.G. was ten.  Derek was still working as a journeyman sheet-metal worker for Frank Millard and Company, earning about $54,000 per year.  He works full time Monday through Friday, from 8:00 a.m. to 4:00 or 4:30 p.m.  Derek testified that beginning in July 2017, he moved into a home owned by Marlis Robberts, where he lives with her and her fifteen-year-old son.  In addition to D.G., Derek has a two-year-old child who lives with a former paramour.  Derek has parenting time with the two-year-old one night a week and every other weekend.

At the time of trial, Danielle was working at Riley Paint Company, Monday through Thursday from 8:00 a.m. to 3:00 p.m. and every other Friday from 8:00 a.m. to 2:00 p.m., earning $11 hourly.  Danielle's other child is younger than D.G. and lives with his father.

With respect to the period from August 2016 to March 2017 when D.G. was in Derek's physical care, Danielle testified she was gone "off and on" for about six months and that she had spent "a month" in Florida.  During the seven months D.G. was in Derek's care, Danielle had contact with D.G. ten to twelve days, including at least one overnight.

Danielle admitted that on July 21, 2018, cocaine was found in the glove box of the car she was driving and also in her purse.  Danielle pleaded guilty to one count of possession of a controlled substance, a serious misdemeanor, and received a deferred judgment and was placed on probation.  Danielle also

---

[3] Danielle represented herself at the modification trial.

acknowledged she was consuming marijuana at the time. Danielle testified the charges stemming from her July 21 arrest were still pending.

Danielle also testified she is bipolar and suffers from anxiety. She is prescribed Alprazolam for anxiety and Seroquel for bipolar disorder, but she was not taking them because she lacked insurance and could not pay for them. She stated she had just regained insurance and had an appointment set up to restart her medications. Danielle testified she had voluntarily suspended her nursing license to settle a charge that she took Tramadol[4] from her employer in 2016.

Danielle testified:

> I have also made some mistakes in the last year due to anxiety and depression. I have been very stressed out over this, and it has not helped our daughter at all. I did finally reach out to my mom for help to see a counselor and get put on medication. I am continuing to seek help.
> My criminal charges have been dismissed or disposed of, except for the one in Henderson County, which there is no conviction on that yet.
> Like I said, I'm seeking help for some anxiety that I have. I have a job. I rent a house, and I pay my own bills. I pray [the court] take that into consideration when making your decision. I am able to provide a loving home for our daughter.

Derek also presented evidence of three DHS child-abuse assessments conducted between December 2017 and August 2018. Two of the assessments were not confirmed, and the third confirmed Danielle's paramour placed D.G. at risk of harm. This confirmed report notes the paramour refused to vacate the

---

[4] Danielle testified Tramadol is "[b]asically like ibuprofen." According to the Mayo Clinic website, "Tramadol belongs to the group of medicines called opioid analgesics. It acts in the central nervous system (CNS) to relieve pain." *Drugs and Supplements: Tramadol (Oral Route)*, Mayo Clinic, https://www.mayoclinic.org/drugs-supplements/tramadol-oral-route/description/drg-20068050 (last visited Nov. 14, 2019).

residence until police arrived and made him leave. No services were offered because the perpetrator was no longer residing in the home.

Danielle's mother testified Danielle was seeing a counselor and her medications were being adjusted. She stated Danielle was going to work every day and "[w]e're also looking at trying to find a house for her." She felt Danielle had "learned her lesson the last" arrest.

The trial court concluded:

> D.G. enjoys a close and healthy relationship with both parents. Through cooperation on each parent's part, D.G. should have the opportunity to continue to develop these strong connections. She also has family in the area to give her emotional support. D.G. has a wonderful relationship with her younger siblings, one in each household.
> D.G. would not benefit from leaving her mother's care, even if joint physical care were ordered. [Danielle] showed she is intelligent through her courtroom demeanor and questioning of witnesses. She chose to represent herself to the best of her abilities without the finances to hire an attorney. She did so in a manner that convinces this court she truly believes D.G. should not leave her home. It is difficult to convey this conclusion other than to say the court was impressed with how she conducted herself.
> [Derek] has not convinced this court that he can provide superior care to D.G. He can point to allegations of DHS involvement, but no services were ordered into the home. He can argue his household wholesomeness is better, but it is not. [Danielle] has allowed men to live with her for short periods of time. That is not advisable. However, [Derek] moved in with his girlfriend, or fiancée, months before marriage. [Derek] makes a strong argument D.G. should not live in a home where drugs are present. However, [Danielle's] mother, Ms. Fenton, gave compelling testimony that she would be required to report her daughter, and would do so, if she suspected this type of home.
> The parties communicate effectively. Neither complains the other is interfering with the parent child relationship. [Derek] is receiving his visitation. Their daughter is doing well. Changing the custodial arrangement, even to joint physical care, is not in D.G.'s best interest. The physical care arrangement agreed upon in 2010 will remain.

Derek appeals, challenging the trial court's findings and focusing extensively on Danielle's poor choice of paramours and the criminal charges Danielle collected while involved with them.

## II. Scope and Standard of Review.

We review equitable proceedings de novo. Iowa R. App. 6.907. However, "we afford deference to the district court for institutional and pragmatic reasons," meaning we give weight to the court's factual findings, and we will affirm "unless the district court failed to do substantial equity." *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017).

## III. Discussion.

Derek argues the district court should have modified physical care. We begin with the following guidance:

> To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the child[ ]'s best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the child[ ]. A parent seeking to take custody from the other must prove an ability to minister more effectively to the child[ ]'s well being. The heavy burden upon a party seeking to modify custody stems from the principle that once custody of [a] child[ ] has been fixed it should be disturbed only for the most cogent reasons.

*In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). "[N]ot every change in circumstances is sufficient" to modify physical care, however. *In re Marriage of Vetternack*, 334 N.W.2d 761, 762 (Iowa 1983). Our paramount concern is the best interests of the child. Iowa R. App. P. 6.904(3)(o).

While we acknowledge the district court found Danielle to be intelligent and "truly believes D.G. should not leave her home," it is the court's task to determine whether conditions have changed substantially and—for the welfare of the child—warrant modification.

For more than two years, Danielle has made several unwise decisions, been involved with abusive men, and been charged with criminal behavior. She left her child in Derek's care and disappeared "off and on" for months. She has forfeited her nursing license after taking medication from her employer. She acknowledges using marijuana and unprescribed controlled substances. Her questionable conduct continued even after Derek filed the petition for modification. These substantial changes were not in the contemplation of the decretal court.

Danielle states she is going to seek mental-health treatment and get back on her medications. She notes she is currently employed and has housing. We commend Danielle for making these recent efforts to attend to her mental health and stability, but her plan to address her mental-health and substance-abuse issues are in the very early stages.

The district court found comfort in the fact that Danielle's mother is a mandatory reporter of child abuse and stated she would report Danielle if she suspected drugs were present in Danielle's home. We are not persuaded. Danielle's mother knew of Danielle's arrest for drugs in July 2018, knew Danielle was hospitalized the weekend she was arrested, and admitted she had never reported Danielle to DHS

We also disagree with the district court's equating Danielle's and Derek's past paramours. Danielle's former relationships were with persons involved in

illegal activity; there is nothing in the record Derek has placed himself in that situation. Derek continues to be employed by his long-term employer. He is living with his fiancée and her son. He provided full-time care for D.G. during Danielle's absence and has continued to consistently provide for her care. D.G. continues to attend the same school. We conclude Derek has met his burden of establishing there has been a substantial change of circumstances and he can offer D.G. superior care. *See In re Marriage of Whalen*, 569 N.W.2d 626, 628 (Iowa Ct. App. 1997). We therefore reverse and remand for entry of a decree placing D.G. in Derek's physical care.

Danielle seeks an award of appellate attorney fees. In a modification action, attorney fees may be awarded at the discretion of the court. *Id.* at 631. We decline Danielle's request.

**REVERSED AND REMANDED.**