# IN THE COURT OF APPEALS OF IOWA

No. 19-0961
Filed June 3, 2020

IN RE THE MARRIAGE OF ERENDIRA ZORAYDA ALDAMA
AND CHRISTOPHER JAMES ALDAMA

Upon the Petition of
**ERENDIRA ZORAYDA ALDAMA,**
        Petitioner-Appellant,

And Concerning
**CHRISTOPHER JAMES ALDAMA,**
        Respondent-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, Bradley J.

Harris, Judge.

Erendira Aldama appeals the district court's denial of her petition to modify

the decree dissolving her marriage to Christopher Aldama.  **AFFIRMED.**

C. Aron Vaughn and Barry S. Kaplan of Kaplan & Frese, LLP, Marshalltown,

for appellant.

D. Raymond Walton, Waterloo, for appellee.

Considered by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**VAITHESWARAN, Presiding Judge.**

Erendira and Christopher Aldama married in 2003 and divorced in 2014. The district court granted Christopher physical care of their three children, born in 2004, 2006, and 2009, subject to midweek and every-other-weekend visitation with Erendira as well as summer visitation of "six weeks," to be taken in "three two-week increments." At the time of the divorce, Erendira lived in Waterloo and Christopher lived in Tama, Iowa.

Four years after the dissolution decree was filed, Erendira petitioned to modify the physical care provision. She alleged "a material and substantial change of circumstance requiring" placement of the children "in [her] primary care." Christopher answered with an assertion that the petition was "a response to his recent move to the Newton Iowa area from his and the children's home in Tama County." He argued the move did "not qualify as a substantial and material change in circumstances given that the distance between their home in Tama County and Newton is not 150 miles in distance." *See* Iowa Code § 598.21D (2018) ("If a parent awarded joint legal custody and physical care or sole legal custody is relocating the residence of the minor child to a location which is one hundred fifty miles or more from the residence of the minor child at the time that custody was awarded, the court may consider the relocation a substantial change in circumstances.").

Following a hearing, the district court denied the petition. The court reasoned that Erendira "failed to establish the required change in circumstances to bring about a modification of the placement." *See In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015) (requiring proof "that conditions since the decree

was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change"). However, the court changed the drop-off and pick-up location for weekend visitations, requiring the parents to exchange the children at "a halfway point between Waterloo and Newton."

On appeal, Erendira contends she established a material and substantial change of circumstances based on (1) "the circumstances surrounding" Christopher's move to Newton; (2) her increased travel for visitations; (3) her inability "to attend many extracurricular activities"; (4) the "scholastic decline" of the older children; (5) "Christopher's lack of support of the children's relationship with" her; and (6) "the children's strong preference to live in Waterloo with" her. On our de novo review, we are not persuaded she satisfied her "heavy burden." *See In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).

Christopher moved to Newton following his acceptance of a job promotion that required him to work in Des Moines. He testified he chose Newton because it "was kind of a midpoint" between Tama and Des Moines, and it had "one of the best schools in that region." He noted that the distance from Waterloo to Newton was less than 150 miles and his move from Tama to Newton only added forty-five miles to the trip from Waterloo. We are persuaded that the distance did not amount to a substantial change of circumstances.

We turn to Erendira's contentions that the move nonetheless doubled her travel time and prevented her from attending the children's extracurricular activities. True, Christopher's move rendered Erendira's Wednesday evening visits more burdensome. But Christopher testified the children's "sport practices

on Wednesdays" made "it a little difficult" for him to transport them to a midway point for the visits. And, he noted that holding the visits in Newton had the added benefit of allowing Erendira to attend the sporting events. Christopher's points are well-taken. Although Erendira's Wednesday visits were cut short by thirty to forty-five minutes because of the travel time, her ability to participate in the children's extracurricular activities together with the district court's modification of the weekend visitation provision to provide for a midpoint exchange offset the decrease in time.

The "scholastic decline" of the older two children was more complicated. Christopher acknowledged that the quarter in which the modification hearing was held was "the worst quarter for [the oldest child] that" he had "seen in a while." He attributed the decline to a lack of motivation as well as the child's age and said he was working with the teachers to address the issue. While the oldest child's apparent downward spiral might be viewed as a substantial change of circumstances, Erendira conceded the children's school struggles were "a problem since before they moved to Newton" and were only "[a] little bit more" problematic after the move. Christopher's testimony about the middle child substantiates her assessment. He noted that the child "had a very difficult time reading" from the time of the divorce and "it took probably a year and a half, two years to get him up to pace." We conclude the older children's grades did not amount to a material and substantial change of circumstances.

Nor are we persuaded that uprooting the children to a new school system for a second time in less than two years was in their best interests. By the time of the modification hearing, the children had been enrolled in the Newton school

district for one school year and, according to Christopher, had settled in and made friends. He conceded the children did "a great job getting homework done" on their weekends with Erendira, but nothing prevented her from continuing to engage the children in this manner.

We come to Erendira's contention that Christopher failed to support the children's relationship with her. *See In re Marriage of Whalen*, 569 N.W.2d 626, 629 (Iowa Ct. App. 1997) ("Failing to cooperate and communicate with a child's other parent can result in loss of custody."). The district court made contrary findings. The court explained that a problem with Erendira's access to school records "was alleviated in a matter of days" and, contrary to Erendira's assertion, the oldest child "was able to contact" her mother "by phone at any reasonable time." The court determined Erendira rather than Christopher was the parent who was less "supportive of" the other's "relationship with the children as the court had previously hoped." We give weight to the findings, in light of the court's unique ability to assess witness credibility. *See Hoffman*, 867 N.W.2d at 32.

We are left with the oldest child's stated preference to live with Erendira. "The court considers a child's wishes on this question, taking into account the child's age and maturity." *Id.* at 35. That said, the child's preference is "entitled to less weight in this modification action than . . . in an original custody proceeding." *Id.*

The child thoughtfully informed the district court of her reasons for wanting a change in the physical care arrangement. The court recognized she had "a much closer relationship with" Erendira but determined a transfer of physical care was not the answer. The court encouraged the parents "to work with [the child] to

maintain her close relationship with [Erendira] and improve her relationship with [Christopher]."

We agree with the court's reasoning. We also credit Christopher's assertion that separation of the oldest child from her siblings was "absolutely" not in the children's best interests. *See In re Marriage of Quirk-Edwards*, 509 N.W.2d 476, 480 (Iowa 1993) ("Siblings in dissolution actions should be separated only for compelling reasons.").

On our de novo review of the record, we conclude the district court acted equitably in denying Erendira's petition to modify the physical care provision of the dissolution decree.

Erendira also sought a modification of the visitation provision of the dissolution decree to afford her "visitation throughout the summer, with Christopher having the children every other weekend and Wednesday evenings." She is correct that the standard for modifying visitation provisions is lower than the standard for modifying a physical care determination. *See In re Marriage of Salmon*, 519 N.W.2d 94, 95–96 (Iowa Ct. App. 1994) ("The parent seeking to modify child visitation provisions of a dissolution decree must establish by a preponderance of evidence that there has been a material change in circumstances since the decree and that the requested change in visitation is in the best interests of the children."). But she did not articulate what change of circumstances warranted such a drastic revision of the decree's liberal summer visitation schedule. Accordingly, we affirm the denial of her request.

**AFFIRMED.**