## IN THE COURT OF APPEALS OF IOWA

No. 16-0274
Filed December 21, 2016

IN RE MARRIAGE OF TRACI L. MALLOY
AND MICHAEL R. MALLOY

Upon the Petition of
TRACI L. MALLOY,
        Petitioner-Appellant,

And Concerning
MICHAEL R. MALLOY,
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Marshall County, James C.

Ellefson, Judge.

        A mother appeals from the district court's order denying the application to

modify physical care, denying the removal of a school-district-residency

restriction, and reducing the father's child support obligation.  **AFFIRMED.**

        Melissa A. Nine of Nine Law Office, Marshalltown, for appellant.

        Michael Marquess of Hinshaw, Danielson & Marquess, P.C.,

Marshalltown, for appellee.

        Heard by Vaitheswaran, P.J., and Potterfield and Bower, JJ.

**POTTERFIELD, Judge.**

Traci Malloy appeals from the district court's order denying her petition to modify the physical-care provisions of the stipulated custody agreement concerning the two minor children she has with her ex-husband, Michael Malloy. Traci also appeals the district court's refusal to remove a residency provision which requires the children reside in the West Marshall School District. Additionally, Traci contends that because she should have been awarded physical care under the modification, Michael should have been ordered to pay an increased child support amount, or alternatively, that the district court erred in reducing his obligation. Finally, Traci argues the district court erred in refusing to award her trial attorney fees and urges us to award appellate attorney fees here. Because we find no substantial change in circumstances and modification is not in the children's best interests, we affirm the district court's denial of the petition to modify and refusal to remove the residency restriction. We also affirm the district court's refusal to award attorney fees as we find no abuse of discretion. Because Traci has failed to make a clear argument concerning the alleged error in child support calculations, we affirm.

## I. Background Facts and Proceedings.

Traci and Michael divorced and entered into a stipulation and agreement concerning their children, property, and debts. In that agreement, Traci and Michael agreed to "50/50" joint care of their three minor children.[1] In the event Traci and Michael could not agree on the specific days the children would be with

---

[1] The eldest child has since reached the age of majority and has graduated from high school.

them, they were to alternate care of the children every other week. Additionally, the parties also agreed, "The children shall reside in the West Marshall School District and remain enrolled there through their high school graduations." Michael agreed to pay Traci $300 a month in child support, a figure apparently not based on the child support guidelines.

Traci filed this petition for modification on April 6, 2015.

Michael lives in Marshalltown and is self-employed. At trial, the court found, Michael averaged an annual salary of approximately $53,184. Traci lives in State Center. At the time of the divorce, Traci did not work outside of the home; however, she now has a full-time job and works in various locations. The court estimated Traci's annual earnings in 2015 would equal approximately $39,312.

Since the entry of the stipulation and agreement, Traci and Michael have never exercised their respective parenting times according to any set schedule. Traci testified that even though they entered into a "50/50" shared agreement, she knew that would never be the situation. Traci contends she is and has always been the children's primary caretaker, and the children continue to primarily reside with her. She alleged that prior to the filing of the instant modification action, Michael would only see the children about once per week. According to Traci, Michael only saw the children upon request and has never tried to enforce any sort of visitation schedule under the shared-care plan. The parties do agree they follow a set holiday schedule.

Traci argued Michael's inconsistent and sometimes unannounced visitation with the children presents an interruption to her and the children's lives.

She testified about incidents involving the children leaving home to have dinner with Michael while the dinner she had prepared went uneaten by the children. Traci also took issue with the fact Michael would frequently take the children out to eat at restaurants, arguing doing so was unhealthy and not in the best interest of at least one child who, according to Traci, struggles with a weight issue.

Traci contends she has never interfered with Michael's requests to see the children, unless that request interfered with her prior plans. Michael apparently left the decision up to the children whether or not they would spend time with him.

The children are involved in various after-school extracurricular activities, and the uncontroverted testimony at trial indicated Michael primarily transports the children to their various activities. The testimony indicated the activities occur nearly daily during the school year, and the children also participate in sports during the summer months. In addition to driving them to practices and rehearsals, both Traci and Michael testified Michael pays all of the expenses related to these activities for all three children—in addition to child support and insurance costs.

The testimony also indicated the children do not keep a regular schedule with their father when it comes to overnight visits at their father's home. Traci testified at trial that one of the children suffers from anxiety issues and does not spend the night at Michael's house very often. Traci attributes the anxiety issues to prior events that have occurred at Michael's house, including the child being involved in a four-wheeler accident and incidents allegedly involving Michael being intoxicated. However, the record revealed the child displays the same

anxieties when attempting to spend the night at friends' houses. Michael stated the child has shown resistance to spending nights at his house, and he indicated that he has never tried to force the child to do so.

The other child had not been sleeping at Michael's house with any regularity; however, that recently changed when the child began spending approximately three to four nights a week at Michael's home.

Traci accuses Michael of having an alcohol-abuse problem. She links this problem to the children's reluctance to spend the night at Michael's home. Michael denies he has such a problem and indicated at trial that he has an occasional beer; he further denies ever being intoxicated in front of the children. Michael does not accuse Traci of being an unfit mother. However, Traci admitted at trial to having been convicted of operating while intoxicated since the entry of the last order.

Traci also asserts Michael engages in manipulative behavior with the children. For example, she testified the children have told her that Michael makes the children feel guilty by telling them they do not spend enough time with him and that he is lonely. Michael denies doing so.

At trial, Traci testified the youngest child had been receiving counseling for the several weeks leading up to trial. When asked about it, Michael said he had no knowledge that their child had been seeing a counselor. Traci contends the counseling center told her they were going to notify Michael about it, although Michael testified he had received no such notification.

In her petition for modification, Traci alleged the parties' original agreement for "50/50" joint care needed to be modified so as to give her physical

care. Traci claimed Michael had done nothing to enforce his rights under the existing agreement and had only suggested a visitation schedule once Traci filed this suit.

In addition to requesting physical care, Traci also asked the district court to remove the residency-restriction provision in the decree. Traci indicated no definite plans for wanting to move the children, but she testified she would like to have the freedom to do so at some later point in time should her job require it or if she would like to be closer to her or her fiancé's relatives in another city.

Finally, Traci requested a recalculation of Michael's child-support obligation.

The district court denied all of Traci's requested modifications, with the exception of the child support calculations. In its holding, the court noted Michael had done everything possible to maintain a relationship with his children without "going to war with Traci" and ultimately held a modification would not be in the children's best interest. When the court denied the request for the residency-restriction to be lifted, the court stated Traci had failed to show a substantial change warranting a modification of that provision. Finally, the court recalculated Michael's child support obligation using an average of his income, reducing his obligation from $300 a month to $110 a month for the three children with an eventual increase to $161 a month for the two younger children, with varying allocations of dependency exemptions.

Traci appeals.

**II. Standard of Review.**

Our review is de novo. *See Dale v. Pearson*, 555 N.W.2d 243, 245 (Iowa Ct. App. 1996). "Prior cases have little precedential value, and we base our decision primarily on the particular circumstances of the parties presently before us." *In re Marriage of Malloy*, 687 N.W.2d 110, 113 (Iowa Ct. App. 2002). "We give weight to the trial court's findings of fact, but are not bound by them." *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002). Moreover, "even if a substantial change is shown, we will not modify the terms of the decree unless its enforcement will be attended by a positive wrong or injustice as a result of changed conditions." *In re Marriage of Sjulin*, 431 N.W.2d 773, 776 (Iowa 1988).

We review the district court's refusal to award attorney fees for an abuse of discretion. *See In re Marriage of Michael*, 839, N.W.2d 630, 635 (Iowa 2013).

**III. Discussion.**

**A. Modification of Physical Care.**

Courts may modify custody only when the party seeking modification has shown "there has been a substantial change in circumstances since the time of the decree, not contemplated by the court when the decree was entered, which was more or less permanent, and relates to the welfare of the child." *Melchiori*, 644 N.W.2d at 368. The party seeking modification "must also prove [s]he has an ability to minister more effectively to the children's well-being." *In re Marriage of Thielges*, 623 N.W.2d 232, 235 (Iowa Ct. App. 2000). Where parents have exercised joint physical care of the children, both have been found to be suitable physical-care parents. *See Melchiori*, 644 N.W.2d at 369. If the joint physical care order must be modified, "[t]he parent who can administer most effectively to

the long-term best interests of the children and place them in an environment that will foster healthy physical and emotional lives is chosen as primary physical caregiver." *In re Marriage of Walton,* 577 N.W.2d 869, 871 (Iowa Ct. App. 1998). The controlling consideration is the best interest of the child. *Thieges*, 623 N.W.2d at 235-36. "The objective of a physical care determination is to place the children in the environment most likely to bring them health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 698 (Iowa 2007). "These principles clearly place a heavy burden on a parent requesting a modification. The burden is necessarily a heavy one undergirding the fundamental policy that 'once custody of children has been fixed it should be disturbed only for the most cogent reason.'" *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015) (quoting *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983)).

Traci asserts that despite the parties having agreed to a joint-custody arrangement at the time of the divorce, they have never actually followed it. She contends the child custody portion of the agreed decree should be modified to eliminate the joint-physical-care provisions and she should be appointed physical caretaker of the two minor children.

After careful consideration of all the evidence, the district court concluded the joint-physical-care provisions should not be modified. Upon de novo review, we reach the same conclusion.

Traci testified Michael has not attempted to exercise his shared-care time with the children. She stated his time with the children is hardly ever scheduled in advance and is not consistent. She argues this inconsistency interrupts the

schedule she has implemented in her home with the children. Further, when asked whether she encourages her children to spend time with Michael, Traci testified "I have encouraged it somewhat but not—." She further stated she had not forced the children to go with Michael because "it's not that important I don't believe to Mick that they stay overnight."

Michael testified he does not spend as much time with the children as he would like. Although he remains active in the children's lives almost daily with their extracurricular activities, he testified the children, especially the older ones, do not spend the night at his home very often. When questioned why Michael has not attempted to enforce the decree with Traci and push for his allotted time, Michael testified "I hate to argue" and "I like to keep things without arguments."

Both Traci and Michael agree that Michael remains active in the children's lives; both of their testimony reveals Michael takes the children to their afterschool activities on nearly a daily basis and he takes the children to dinner often. He has remained as active as possible in their children's lives.

As to overnight visitation, both Traci and Michael acknowledge the children do not spend the night at Michael's home very frequently. Michael testified the oldest child is busy with extracurricular activities and an afterschool job, so he understands the child's schedule is not always permitting. As to his middle child, both Michael and Traci acknowledge the child suffers from some anxiety issues which make overnight visits difficult; Traci contends the child's apprehensions come from Michael's alleged alcohol abuse. Finally, both parties agree the youngest child does spend considerably more time with Michael and spends the night at his home about three to four nights a week.

As to the allegations Michael has an alcohol-abuse problem, Traci testified at trial Michael's alcohol use has existed since before the divorce. The district court found and we agree this is not a new circumstance; it existed before the entry of the last order. Therefore, without more, Traci cannot rely on it as a ground of substantial change. *See Frederici*, 338 N.W.2d at 158 (holding "[t]he changed circumstance must not have been contemplated by the court when the decree was entered").

The crux of Traci's basis for modification is that Michael has not actively tried to enforce the shared physical care agreement. Although we agree with her contention that Michael has not done *everything* possible to enforce the existing order, we find he remains actively involved in the children's lives on a near daily basis and has attempted to respect the children's wishes and keep the peace with Traci. The evidence indicates the children are healthy and thriving, so we see no need to interrupt that.

Traci relies on three cases to support her position that it is a material change in circumstances when the shared-care schedule is not followed. She first cites to *In re Marriage of Brown*, where this court found a child's anxieties and frustrations with having to go between each parent's home mid-week amounted to a sufficient material change and warranted a modification to a "more regular and predictable schedule during the week" allowing each parent "maximum continuing contact with both parties." 778 N.W.2d 47, 55 (Iowa Ct. App. 2009). She also relies on *In re Marriage of Harris*, where the court found a material change when the parents, who had initially agreed to shared care, could no longer communicate with each other civilly. 877 N.W.2d 434, 440 (Iowa

2016). The court there also noted the parties' original agreement had "not evolved as envisioned and the children [would] benefit from a modification that designates a primary physical caregiver." *Id.* at 441. Finally, she cites to *In re Marriage of Walton*, where this court found a material change where the parties failed to cooperate with each other, interfered with the other's rights to the children, and their shared-care agreements had "not evolved as envisioned." 577 N.W.2d 869, 870 (Iowa Ct. App. 1998).

On our review, we do not find these cases helpful for Traci's contention. It is true there is a child with anxiety issues here as in *Brown*; however, the court in *Brown* found the sufficient change because the shared-care arrangement *caused* the child's anxieties. Here, there is nothing to suggest the child's anxieties stem from the shared-care agreement. The child's anxieties were not limited to overnight visits at Michael's house; it also included sleepovers at friends' houses. Also, both parties agree the child's anxieties have improved in recent years. This does not amount to a change of circumstances. Furthermore, like in *Harris* and *Walton*, both parties acknowledge they do not communicate with each other as well as they could; however, the record reflects they are able to communicate, whether by telephone or text, concerning their children. Additionally, we do not see how the shared-care agreements have not evolved as envisioned by the parties. While the parties did not contemplate every situation that could arise in trying to execute their agreement, nothing has occurred that has made their agreement unworkable.

The common thread among the three cases Traci relies upon is that a modification was necessary because the current arrangement was not working.

However, unlike those three cases, the arrangement here does work. The record reflects the children have thrived and maintained a close relationship with both parents. We, therefore, find there has been no substantial change in circumstances since the decree's entry to warrant a modification and the current order is in the children's best interests.

Even if we were to find a substantial change in circumstances to support a modification, Traci has not met her burden to show she can offer superior care. *See In re Marriage of Whalen*, 569 N.W.2d 626, 628 (Iowa Ct. App. 1997). Traci "must show an ability to minister to the children's needs superior" to Michael's ability. *Id.* "If both parents are found to be equally competent to minister to the children, custody should not be changed." *Id.*

The evidence indicates both Traci and Michael are highly involved in their children's lives. There is no proven indication that either parent is deficient in any way. Although Traci is now employed and is not at home as much as she previously was at the time of the last order's entry, we do not find this makes her more or less superior than Michael. We find that both parents are equally competent. Therefore, Traci has failed to establish she is the superior parent and has not met her burden.

We affirm on this issue.

**B. Residency Restriction.**

Next, Traci urged the trial court to lift the residency restriction from the agreement. Traci and Michael agreed to remain living in the West Marshall School District for the children until the children graduated from West Marshall schools. Now, Traci asks for the restriction to be removed in the event that at

some point in the future, she would have the ability to move for either her work or to be closer to other members of her or her fiancé's families.

Again, Traci must show that removing this provision from the decree is warranted because there has been a substantial change in circumstances not contemplated by the district court when the decree was entered. *See Frederici*, 338 N.W.2d at 158.

A review of the evidence indicates Traci cannot prove a substantial change warranting a modification. By Traci's own admission, the only reason she would like the restriction removed from the decree is so that she has the ability to potentially move at some point in the future. At trial, when asked about her plans to move, Traci indicated, "We don't have plans to do so now but eventually." Without a more concrete plan in place by Traci, it is impossible for us to discern if a move out of the school district would amount to a substantial change and if it would be in the children's best interests. *See, e.g.*, *Thielges*, 623 N.W.2d at 232.

Therefore, we affirm the district court's denial of Traci's request to remove the residency-restriction provision.

## C. Child Support.

Traci next contends if we find a modification was warranted and do modify the existing order, then we should remand the case to the district court to recalculate Michael's child support obligation. In the alternative, Traci argues that if we do not modify the existing joint physical care order, we should review the lowered child support obligation imposed by the district court.

Prior to this action, Michael agreed to pay Traci $300 a month. At trial in this case, Michael's obligation was lowered to $110 per month for three minor children and then was set to increase to $161 for the two minor children. Having reviewed the record, we find only the worksheets proposed by Michael based upon $50,000 annual income. The court indicated in its order it used an annual income for Michael of $53,184 to calculate his obligation and a health insurance premium of $600.00. Using those figures, the court designated Michael as a child support payor. Michael asks us to affirm the court's child support calculations and argues that Traci has failed to assign any specific error in her argument.[2] As a general rule, "we will not speculate on the arguments [appellant] might have made and then search for legal authority and comb the record for facts to support such arguments." *Hyler v. Garner,* 548 N.W.2d 864, 876 (Iowa 1996). In most cases the appellant's "random mention of an issue, without analysis, argument or supporting authority is insufficient to prompt an appellate court's consideration." *State v. Mann,* 602 N.W.2d 785, 788 n. 1 (Iowa 1999). We affirm the trial court's ruling on child support.

**D. Attorney's Fees.**

Traci next contends she is entitled to both trial and appellate attorney fees. Specifically, Traci argues she should have been awarded trial attorney fees because she should have prevailed.

Iowa Code section 598.36 (2015) provides, "In a proceeding for the modification of an order or decree under this chapter the court may award

___

[2] Traci agreed at oral arguments the income figures used by the district court were correct and she had not specified the basis for her argument the child support was incorrect, except to say the calculated totals seemed skewed.

attorney fees to the prevailing party in an amount deemed reasonable by the court." "An award of trial attorney fees rests in the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion." *McKee v. Dicus*, 785 N.W.2d 733, 740 (Iowa Ct. App. 2010). Here, the district court declined to award Traci attorney fees because she did not prevail; similarly, the court declined to award attorney fees to Michael due to his better ability to pay. We therefore find it was not an abuse of discretion for the court to decline to award attorney fees to Traci.

Traci also requests an award of appellate attorney fees. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Okland,* 699 N.W.2d 260, 270 (Iowa 2005). In considering whether to award appellate attorney fees, we consider "'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *Id.* (quoting *In re Marriage of Geil,* 509 N.W.2d 738, 743 (Iowa 1993)). After carefully considering each of these factors, we decline to award Traci appellate attorney fees.

**AFFIRMED.**